NATIONAL LUMBER PRODUCTS CO., PROSECUTOR, v. LOUIS D. PONZIO, AS BUILDING INSPECTOR OF THE BOROUGH OF BOGOTA, THE BOARD OF ADJUSTMENT OF THE BOROUGH OF BOGOTA AND THE BOROUGH OF BOGOTA, RESPONDENTS.

Argued January 16, 1945—Decided June 5, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PERSKIE.

For the prosecutor, *Abraham P. Bab*.

For the respondents, *Walter Jones*.

The opinion of the court was delivered by

PERSKIE, J. We are concerned in this zoning case (*R. S.* 40:55–30, *et seq.*), with the propriety *vel non* of the denial, by the Board of Adjustment of the Borough of Bogota, of prosecutor's application for a variance from the requirements of the zoning ordinance of the borough, adopted on March 14th, 1929. The variance sought was to permit prosecutor to use a planing machine on its premises (50 Cross Street and 90 Elm Avenue) where, since 1938, it has conducted a retail lumber yard. The premises are located in what is classed under the zoning ordinance as "A" residence zone.

In support of its written application for the stated variance, prosecutor invoked, in substance, the provisions of *R. S.* 40:55–48 (continuation of a non-conforming use) and the provisions of *R. S.* 40:55–39(c) (variance from strict adherence to the ordinance).

On due notice and hearing, the Board of Adjustment of the borough, on June 9th, 1944, unanimously denied prosecutor's application. The prosecutor was allowed a writ of *certiorari* to review that denial.

Prosecutor's application for the variance, as we have seen, was based upon two theories. They are clearly contradictory and irreconcilable. If the planing machine which prosecutor had in fact installed and used, without permit, were in fact but the continuation of a non-conforming use then prosecutor's application for a variance so that it could continue such non-conforming use was obviously meaningless; it was not necessary. For prosecutor unquestionably had that right both under the statute (*R. S.* 40:55–48) and under the zoning ordinance of the borough. Implicit therefore in prosecutor's application for the variance was its acknowledgment that it had no legal right to use the planing machine. Hence prosecutor invoked the statutory relief for such right. *R. S.* 40:55–39(c).

In light, however, of the facts that the record submitted

discloses that testimony was fully taken by the respective parties on both theories of prosecutor's application and that both theories are fully argued, we shall consider and determine this case on the merits of the theories adopted and pursued below and here. *Lastowski* v. *Lawnicki*, 115 *N. J. L.* 230; 179 *Atl. Rep.* 266; *Nazarro* v. *Hudson and Manhattan Railroad Co.*, 125 *N. J. L.* 108; 14 *Atl. Rep.* (*2d*) 521; *affirmed*, 125 *N. J. L.* 509; 17 *Atl. Rep.* (*2d*) 173.

1. *As to continuation of a non-conforming use.* The spirit of the Zoning Act, as reflected by legislative intent and by our adjudications, is to restrict and not to increase any non-conforming use. The non-conforming use must be a continuation of the same use and not some other kind of use. The test is that the non-conforming use must be the same before and after the passage of the zoning ordinance. *Burmore* v. *Smith*, 124 *N. J. L.* 541, and cases collated at *pp.* 546, 547; 12 *Atl. Rep.* (*2d*) 353. Thus each zoning case necessarily stands upon its own facts. *Cook* v. *Board of Adjustment, Trenton*, 118 *N. J. L.* 372, 375; 193 *Atl. Rep.* 191; *Bianchi* v. *Morey*, 128 *N. J. L.* 219, 221; 24 *Atl. Rep.* (*2d*) 566. We turn to what we conceive to be the further pertinent facts.

Prosecutor's predecessors in title conducted a retail lumber yard, as distinguished from a lumber mill, on the premises in question from 1924 to 1935 when the premises were "closed down" because of resultant financial difficulties of the then owner. The premises remained closed until 1938 when they were purchased by prosecutor which thereafter continued the use of said premises as a retail lumber yard. We are told— without denial—that the distinction between the operation of a retail lumber yard and a retail lumber mill is that in the latter (mill) the raw wood is dressed while in the former (yard) it is not. In both, however, lumber is sold in the same condition in which the operator purchased same, *i. e.*, raw and dressed, and in both, each stated class of lumber is cut to meet the required dimensions. Thus in both the same type of equipment is necessary to do the cutting. Giving to the prosecutor the most favorable version of the contradictory proofs as to what equipment had been used in the cutting of the lumber prior to the adoption of the zoning ordinance in

1929, we shall assume that a five horsepower motor had been installed and used in the premises to operate a saw of some type. But in February of 1944, prosecutor installed and used, without a permit, a fifteen horsepower planer for the dressing of rough lumber. This, we need hardly labor the point, was a substantial increase, and an enlargement of the non-conforming use employed prior to the passage of the zoning ordinance. We perceive nothing in principle which distinguishes the case at bar from the case of *Home Fuel Oil Co.* v. *Glen Rock,* 118 *N. J. L.* 340, 344; 192 *Atl. Rep.* 516, in which the prohibited proposed increase of storage capacity from about 100,000 gallons of fuel oil to 450,000 gallons was sustained.

(a) We do not share the view that the "closing down" of the premises between 1935 and 1938 constituted, in the circumstances, an "abandonment" or "discontinuance" of the theretofore admitted permissible non-conforming use of the premises. The reason for the closing down and prosecutor's purchase and continued use of the premises as a retail lumber yard, save as to the subsequent increase and enlargement thereof, negatives the contention to the contrary. *Cf. Campbell* v. *Board of Adjustment, South Plainfield,* 118 *N. J. L.* 116; 191 *Atl. Rep.* 742.

2. *As to variance from strict enforcement of the ordinance on the ground of undue hardship.* The "essential inquiry" on an "application for a variance" is whether, in the circumstances exhibited, the denial thereof constitutes an "unnecessary and unjust invasion of the fundamental right of property." In answering that inquiry the Board of Adjustment exercises a *"quasi-*judicial function" which is in essence discretionary, controlled by the "policy" of the "statute" and of the "ordinance" consistent therewith. *Brandon* v. *Montclair,* 124 *N. J. L.* 135, 145; 11 *Atl. Rep.* (2d) 304; *affirmed,* 125 *N. J. L.* 367; 15 *Atl. Rep.* (2d) 598; *Scaduto* v. *Bloomfield,* 127 *N. J. L.* 1; 20 *Atl. Rep.* (2d) 649. The result of power so exercised, carries with it the presumption of "fairness and correctness." *Pieretti* v. *Johnson,* 132 *N. J. L.* 576; 41 *Atl. Rep.* (2d) 896. Unless, therefore, prosecutor has shown that the denial of its application for the variance was

"clearly against the weight" of the evidence in favor of the application for the variance, or that the denial was grounded in "abuse of discretion" or was "arbitrary or capricious," then the denial "should stand." *Green* v. *Board of Commissioners of Newark,* 131 *N. J. L.* 336; 36 *Atl. Rep.* (*2d*) 610; *Pieretti* v. *Johnson, supra; Saraydar* v. *Newark,* 131 *N. J. L.* 290; 36 *Atl. Rep.* (*2d*) 289. Prosecutor has made no such showing.

Let us briefly consider prosecutor's proofs in support of its alleged claim of undue hardship. It asserts that about ninety per cent. of its business consists of war work and that the use of the planing machine is necessary to carry on that work, and that if it could not operate the planer its business would suffer the loss of customers. In approximating the percentage of business it might lose (without apparent limitation as to its present business with the government) the answer given was "it would be hard to say, but in dollars and cents—$150 worth of lumber, $8,000 or $10,000—a considerable amount."

Neither ground has merit. Passing over the vague appraisal of prosecutor's approximated loss in its general business, the fact that a non-conforming use is more profitable to the landowner is not *per se* a sufficient reason for a variation. *Brandon* v. *Montclair,* 124 *N. J. L.* 135, 149; *Scadulo* v. *Bloomfield, supra* (at *p.* 3); *Peterson* v. *Palisade Park,* 127 *Id.* 190, 193; 21 *Atl. Rep.* (*2d*) 777. Nor does the circumstance that prosecutor is doing war work support the claim of undue hardship. Common sense dictates that prosecutor undertook the war work with full knowledge of its equipment on hand and with full knowledge of the equipment necessary to do that work, which apparently required the planing of rough lumber. Prosecutor admits that it could have had the planing done elsewhere with two to six weeks delay; but instead it chose to install and use the planer the operation of which required three times the horse power than was ever theretofore used on the premises.

Prosecutor knew or was charged with knowing that it could neither increase nor enlarge the non-conforming use of its lumber yard. Despite such factual and legal knowledge, prosecutor apparently chose to take a chance and installed

and used the planer without legal sanction. It may not, under such circumstances, be heard to complain.

(a) Nor is there merit to the claim that the denial was "illegal and invalid" because prosecutor's user of the planer does not bear substantial relation to the promotion of "health, morals or the general welfare." *R. S.* 40:55-32. It was clearly open to the Board of Adjustment to find to the contrary.

True there are two paper mills and two railroads in the immediate vicinity of prosecutor's yard. They were unquestionably in existence and in use prior to the adoption of the zoning ordinance. There is nothing to indicate that complaint was made because of noise emanating from their operation. On the other hand, after the installation and operation of the planer, over 190 residents of the borough, constituting about 125 families, petitioned the Board of Adjustment, *inter alia*, to "abolish the operation" of the planing because the noise created in the operation thereof was detrimental to "health and welfare" of the community. Without detailing the proofs, it should suffice to point out that they indicate that this planer was operated from 8:00 A. M. to about 5:00 P. M., with exception of the noon hour. This noise was heard within a "radius of half a mile" from the lumber yard; it was so loud that it could be heard in some houses in the neighborhood when the "windows" thereof were closed; that it was a "nerve-racking noise;" and that it was destroying the "health" of the people living in the neighborhood.

To argue that the aforestated consequences flowing from the operation of the planer bear no substantial relationship to the stated provisions of *R. S.* 40:55-32 is contrary to the proofs and to the common experience of mankind. At all events, it is not the function of this court under the circumstances to substitute its judgment for that of the Board of Adjustment. *Brandon* v. *Montclair*, 124 *N. J. L.* 135, 145; *Cf. Resciniti* v. *Board of Commissioners, Belleville*, 117 *Id.* 1; 186 *Atl. Rep.* 439.

3. There is no merit to the claim that prosecutor was denied due process simply because the Board of Adjustment dismissed its application without specifying any reason in support of

its action. The statute (*R. S.* 40:55–39(c)) makes no such requirement. *Cf. Keiser* v. *Plainfield,* 10 *N. J. Mis. R.* 496; 159 *Atl. Rep.* 785. The writ brought up for review the denial of prosecutor's application. That denial was clearly final in character. *Crescent Hill, Inc.,* v. *Allendale,* 118 *N. J. L.* 302; 192 *Atl. Rep.* 514; *Cf. Brandon* v. *Montclair,* 124 *N. J. L.* 135, 138. Our concern in such a situation is not with the reasons underlying the action under review but rather are we concerned with the question of whether the action under review was right or wrong. *McCarty* v. *West Hoboken,* 93 *Id.* 247; 107 *Atl. Rep.* 26; *Central Railroad Company of New Jersey* v. *State Tax Department,* 112 *N. J. L.* 5, 16; 169 *Atl. Rep.* 489; *cer. den.,* 293 *U. S.* 568; 79 *L. Ed.* 667; *Wyckoff* v. *Monmouth County,* 127 *N. J. L.* 268, 271; 21 *Atl. Rep.* (2d) 791. A different principle applies where the Board of Adjustment exercises its power and grants a variance. In such a situation, the jurisdictional requirement for the exercise of its power is a finding by the Board of Adjustment, based upon legal evidence, tending to establish the statutory provisions which bring such power into play. *Brandon* v. *Montclair,* 125 *N. J. L.* 367, 368; *Green* v. *Board of Commissioners of Newark, supra* (at *p.* 338).

The writ is dismissed, with costs.