IN THE MATTER OF THE APPLICATION AND APPEAL OF W. B. O'NEAL AND ALICE O'NEAL COOK, BEFORE THE BOARD OF ADJUSTMENT OF THE ZONING ORDINANCE OF THE CITY OF CHARLOTTE, NORTH CAROLINA.

(Filed 11 April, 1956.)

**1. Constitutional Law § 13—**

The original zoning power reposes in the General Assembly.

**2. Constitutional Law § 8c: Municipal Corporations § 36—**

The General Assembly has delegated its police power to enact zoning regulations to municipal corporations. G.S. 160-172.

**3. Municipal Corporations § 37—**

In order to be valid, a zoning regulation must bear a substantial relation to the public health, safety, morals or general welfare.

**4. Same—**

The zoning power of a municipality is limited by the enabling act, and the "legislative body" of a municipality cannot delegate such power to a board of adjustment or to a zoning commission. Therefore a board of adjustment may not permit a type of business or building prohibited by ordinance.

**5. Municipal Corporations § 36—**

The rules applicable to the construction of statutes apply equally to the construction of an ordinance adopted by the "legislative body" of a municipality.

**6. Statutes § 3: Municipal Corporations § 37—**

The 1936 North Carolina Building Code has the force of law by reason of its ratification and adoption by Chapter 280, Public Laws of 1941.

**7. Municipal Corporations § 37—**

Misapprehension as to the applicability of the 1936 North Carolina Building Code and delay in its enforcement do not bar later enforcement.

**8. Same—**

Where an ordinance deals solely with zoning, a provision thereof relating to the continuance of lawful uses relates to uses lawful in respect to zoning regulations, and a use lawful under zoning regulations in force at the time of the adoption of the ordinance comes within the exception, notwithstanding that the building, at the time of the beginning of its use for a nursing home, violated pertinent provisions of the Building Code.

**9. Same—**

Zoning regulations must be interpreted to achieve a fair balance between the purpose of preserving the true character of a neighborhood by excluding new uses and structures prejudicial to the restricted purposes of the area, and the purpose of protecting an owner's property from impairment which would result from enforced accommodation to new restrictions.

**10. Same—**

Zoning ordinances are in derogation of the right of private property, and exemptions should be liberally construed in favor of the property owner.

**11. Same—Under facts of this case owner was entitled to construct building to conform to Building Code in order to continue use permitted at time of adoption of zoning ordinance.**

Petitioners were operating a nursing home at the time of the enactment of a zoning ordinance limiting use of land in the area to residential pur-

poses. Thereafter they were advised that they would not be allowed to continue operations unless they complied with fireproof provisions of the North Carolina Building Code relating to institutional buildings. Application for permit to erect a fireproof building so that the operation of the nursing home might be continued was denied on the ground that provision of the ordinance permitting the continuance of non-conforming uses stipulated that buildings for non-conforming uses could not be enlarged or extended. *Held:* Under the facts of this case, petitioners have the legal right to construct or reconstruct a fireproof building on their land, subject to the limitation that the scale of operations may not be substantially increased.

Devin, J., took no part in the consideration or decision of this case.

Appeal by petitioners from *Campbell, J.,* 23 January, 1956, Regular "B" Civil Term, of Mecklenburg.

The hearing below was to review, on *certiorari,* the action of the Board of Adjustment, with reference to petitioners' application for a building and occupancy permit for the erection of a new, one-story, fireproof building, for use in the continued operation by petitioners of Hillcrest Manor Nursing Home. Petitioners had appealed to the Board of Adjustment from the refusal of the City Building Inspector to grant their said application.

The factual situation, as presented to the Board of Adjustment, was substantially as follows:

1. Petitioners, W. B. O'Neal and his mother, Mrs. Alice O'Neal Cook, had operated the Hillcrest Manor Nursing Home at its present location, now designated #2435 Sharon Road, continuously since 1938.

2. Petitioners own a tract of land containing approximately 3 acres, fronting 200 feet on Sharon Road and running through the entire block to a frontage of 143 feet on Tanglewood Lane, with an average depth of 739 feet. They purchased first what is called Lot 1, which fronts 200 feet on Sharon Road and runs back to an average depth of 344 feet, *being the portion of their property on which the present building is located and on which the proposed new building would be erected.* Lot 2 fronts 143 feet on Tanglewood Lane, runs back to a common rear line with Lot 1, with an average depth of 395 feet. Lot 2 is a wooded, vacant lot. It is restricted to residential uses by deed restrictions. There are not now, and never have been, any deed restrictions on Lot 1.

3. The first comprehensive zoning ordinance of the City of Charlotte was adopted by the City Council in January, 1947. It covered all property then within the corporate limits. (The 1947 ordinance and zone map were before this Court in *James v. Sutton,* 229 N.C. 515, 50 S.E. 2d 300.) At that time, the site of Hillcrest Manor Nursing Home was

outside the corporate limits. Subsequently the corporate limits were extended; and this site was within the corporate limits in April, 1951, when a new comprehensive zoning ordinance was adopted. Under the 1951 ordinance, petitioners' property is in a Residence 1 District, the most restricted or highest classification.

4. From time to time 27 patients have resided simultaneously in Hillcrest Manor Nursing Home, this being its maximum capacity. At the time of the hearing, 20 patients resided therein. If the proposed fireproof building is erected, the maximum capacity of the establishment, so petitioners represented at the hearing, will be 24 patients. There has been no change in the manner of operation of Hillcrest Manor Nursing Home from its establishment in 1938 until the present time.

5. Hillcrest Manor Nursing Home was inspected regularly by city fire and health officials. Prior to 14 June, 1955, no objection was made. On that date, petitioners were notified by the Building Inspector of the City of Charlotte that they would not be allowed to continue operation. On 30 June, 1955, the Commissioner of Public Welfare (G.S. 108-3 (15)) notified petitioners that their license, upon expiration on 30 June, 1956, would not be renewed unless petitioners complied with provisions requiring fireproof facilities. The basis for each notice was that petitioners' building, a two-story, frame building with asbestos shingle weatherboarding, did not comply with requirements of the North Carolina Building Code in respect of fireproof facilities for a nursing home.

6. Section 2.1(b) of the 1936 North Carolina Building Code contains this definition: "Section 2.1(b) 'Institutional building' means a building in which persons are harbored to receive medical, charitable, or other care or treatment, or in which persons are held or detained by reason of public or civic duty, or for correctional purposes; including among others, hospitals, asylums, sanatariums, fire houses, police stations, jails." Section 4.24 of said Building Code provides: "Section 4.24. Institutional Buildings. For institutional buildings semi-fireproof construction shall not exceed seventy-five feet; ordinary and heavy timber construction shall not exceed two stories nor forty feet; and frame construction shall not exceed one story nor thirty-five feet." A 1953 amendment to said Building Code included "homes for the aged" in the list of specifically designated institutional buildings. Enforcement of these provisions as to nursing homes, including Hillcrest Manor Nursing Home, began in 1955.

7. Petitioners must discontinue the operation of Hillcrest Manor Nursing Home in their present building; and they must discontinue operation altogether on the present site, to wit, said Lot 1, where it has been operated since 1938, unless they can obtain a permit to erect a fireproof building for occupancy and use for such purpose.

8. The only evidence before the Board of Adjustment bearing upon the subject was to the effect that: (1) there was a great need for such facilities for the care of elderly people; (2) it was difficult for elderly people to adjust themselves upon removal from one such institution to another; and (3) the management of Hillcrest Manor Nursing Home and its care for its patients resident therein are worthy of high commendation.

9. A large number of owners of property along Sharon Road and Tanglewood Lane opposed the granting of the application. Charles Saunders and Harry Bangle join with the City of Charlotte as appellees herein. Appellee Saunders resides at 2508 Tanglewood Lane. Appellee Bangle owns property adjoining and immediately south of said Lot 1. The record indicates that the owner of the property immediately adjoining and north of said Lot 1, and the owner of the property west of and across Sharon Road from said Lot 1, interpose no objection.

Three members of the Board of Adjustment favored granting the permit on (unspecified) conditions. Two members were of opinion that the Board of Adjustment had no legal authority to grant the permit. Thereupon, ". . . The Board voted to deny the request on the grounds that the Board was without power to grant the request."

The court affirmed this ruling of the Board of Adjustment. The reasons underlying the court's decision, incorporated in the judgment, are as follows:

"This court further finds (a) at the time of the adoption of the Zoning Ordinance of the City of Charlotte in the year 1947 the petitioners' use of the premises was unlawful for the reason that such use was in violation of the North Carolina Building Code and the provisions of Section IX of the Zoning Ordinance are not applicable to the facts of this case, (b) the building of an additional building upon the premises for the purpose of operating a nursing home therein would constitute an enlargement or extension of a non-conforming use, and therefore the petitioners are not entitled to a Building Permit and Occupancy Certificate to construct the proposed building and occupy the same for the purpose of continuing the operation of a nursing home."

Petitioners excepted to and appealed from the judgment, their exceptive assignments of error being directed to each of the court's findings or rulings, to wit, (a) and (b), on which the judgment is predicated.

*David Craig, Jr., for petitioners, appellants.*
*John D. Shaw for respondents, appellees.*

BOBBITT, J. The original zoning power of the State reposes in the General Assembly. *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880.

It has delegated this power to the "legislative body" of municipal corporations. G.S. 160-172 *et seq.* Within the limits of the power so delegated, the municipality exercises the police power of the State. *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897. Zoning ordinances are upheld when, but only when, they bear a "substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A.L.R. 1016; *Nectow v. Cambridge,* 277 U.S. 183, 72 L. Ed. 842, 48 S. Ct. 447; *Washington v. Roberge,* 278 U.S. 116, 73 L. Ed. 210, 49 S. Ct. 50, 86 A.L.R. 654.

The power to zone, conferred upon the "legislative body" of a municipality, is subject to the limitations of the enabling act. *Marren v. Gamble, supra; S. v. Owen,* 242 N.C. 525, 88 S.E. 2d 832. The "legislative body" of a municipality cannot delegate such power to a board of adjustment or to a zoning commission. *James v. Sutton,* 229 N.C. 515, 40 S.E. 2d 300; *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128; *Harrington & Co. v. Renner,* 236 N.C. 321, 72 S.E. 2d 838. Hence, a board of adjustment may not "permit a type of business or building prohibited by the ordinance, for to do so would be an amendment of the law and not a variance of its regulations." *Lee v. Board of Adjustment, supra,* and cases cited.

The 1951 zoning ordinance of the City of Charlotte, hereafter called the 1951 ordinance, specifies the Uses Permitted in each of the several districts or zones. Any use not permitted, expressly or impliedly, is a violation thereof; and such violation is a misdemeanor. By express provision, a nursing home is a permitted use in a Residence 2 District. It is not a permitted use in a Residence 1 District.

Petitioners' property, located in a Residence 1 District, has been operated as a nursing home in violation of the zoning ordinance *unless* they were lawfully entitled to continue such non-conforming use by reason of the exemption set forth in the 1951 ordinance under the caption, "Section IX—Non-Conforming Uses," which provides:

"The lawful use of any building or land existing at the time of the adoption of this ordinance may be continued, but not enlarged or extended although the use of such building or land does not conform to the regulations of the district in which such use is maintained. An existing non-conforming use of a building or premises may be changed to another non-conforming use of the same or higher classification, but may not at any time be changed to use of a lower classification.

"No non-conforming use may be reestablished in any building or on any premises where such non-conforming use has been discontinued for a period of one year.

"Any non-conforming building or structure damaged by fire, explosion, flood, riot or act of God may be reconstructed and used as before

any such calamity, provided such reconstruction takes place within one year of the calamity."

Our task is to construe the quoted provisions of the 1951 ordinance as applied to the factual situation here presented. Our chief concern is to ascertain the legislative intent. *Greensboro v. Smith*, 241 N.C. 363, 85 S.E. 2d 292. The rules applicable to statutes apply equally to the construction and interpretation of an ordinance adopted by the "legislative body" of a municipality. Yokley, Zoning Law and Practice, Second Edition, sec. 184.

Unpopularity, harshness and doubtful constitutionality of an ordinance, absent such provision, ordinarily prompt the inclusion of some provision in such ordinances permitting the continuance of a non-conforming use. Yokley, *op. cit.*, sec. 50.

We agree with the contention of appellees that the two-story frame building when operated by petitioners as the Hillcrest Manor Nursing Home must be considered an institutional building and that when so considered it does not comply with the requirements of the 1936 North Carolina Building Code. It is noted that the 1936 North Carolina Building Code, by reason of its ratification and adoption by Ch. 280, Public Laws of 1941, has the force of law. See opinion of *Parker, J.*, in *Lutz Industries, Inc., v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333. Moreover, misapprehension as to the applicability of the 1936 North Carolina Building Code and delay in its enforcement does not bar enforcement of its requirements now. See *Raleigh v. Fisher, supra.* Indeed, the fact that the said building code provisions can be enforced now is the cause of petitioners' dilemma. If this were not so, petitioners could continue operation of Hillcrest Manor Nursing Home as in the past.

Even so, we are inclined to the view that the City Council, by the words "lawful use" in Section IX of the 1951 ordinance, had reference only to the provisions of the prior zoning ordinance or ordinances of the City of Charlotte.

The subject matter of the 1951 ordinance is zoning, nothing else. Section IX, dealing with Non-Conforming Uses, concerns non-conforming uses in respect of zoning, not in respect of provisions of a building code, State or local. If the use of the building or land was or is unlawful as violative of any statute or ordinance dealing with a different subject matter, such use may be prohibited under the terms of such other statute or ordinance.

Section IX of the 1951 ordinance, as we construe it, applies if, at the time of the adoption of said ordinance, the use then being made of the building or land was non-conforming in respect of the zoning regulations then enacted but lawful in respect of zoning regulations, if any,

theretofore in force. Hence, petitioners are entitled to the rights under Section IX of the 1951 ordinance of those whose non-conforming use of buildings or lands was lawful *in respect of zoning regulations* at the time of the adoption of said ordinance. (See *Raleigh v. Fisher, supra,* where the 1944 ordinance provision permitting "continuance of any use of land or buildings which now legally exists" afforded no protection to property owners then using their property in violation of the provisions of the prior zoning ordinance.)

Under Section IX of the 1951 ordinance, petitioners' use of their building and land "may be continued, but not enlarged or extended although the use . . . does not conform to the regulations of the district in which such use is maintained." Appellees contend that Section IX does not permit new construction. Thus, the argument runs, since petitioners cannot comply with the requirements of the 1936 North Carolina Building Code without new construction, either by way of reconstructing the present building or by constructing a new building, the benefits of Section IX are not available to them. We are inclined to the view that, as applied to the factual situation here presented, this interpretation goes beyond the intention of the lawmaking body.

"We believe it may best be said that zoning serves a two-fold purpose—one, to preserve the true character of a neighborhood by excluding new uses and structures prejudicial to the restricted purposes of the area, and gradual elimination of such existing structures and uses; and, second, to protect an owner's property or existing residence, business or industry from impairment which would result from enforced accommodation to new restrictions." Yokley, *op. cit.,* sec. 11. It would seem that reasonable interpretation requires that we seek to achieve a fair balance between these two somewhat conflicting purposes.

Appellees cite *Goodrich v. Selligman,* 298 Ky. 863, 183 S.W. 2d 625; *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613; *Cole v. Battle Creek,* 298 Mich. 98, 298 N.W. 466; *State ex rel. Miller v. Cain,* 40 Wash. 2d 216, 242 P. 2d 505.

In the *Goodrich case,* the ordinance provision as to the continuance of non-conforming use prohibited *structural* alterations; and the applicant was denied the right to tear down old structures and erect entirely new ones. In the *Colati case,* the applicant was denied the right to raze and remove his buildings and build anew on a much larger scale. In the *Cole case,* decision turned on the ordinance provision as to nonconforming use which, as in the *Goodrich case,* prohibited *structural* alterations. In *State v. Cain,* the ordinance provision as to the continuance of non-conforming use prohibited *structural* alterations; and the applicant was denied the right to construct new and larger nonconforming buildings in the place of an existing non-conforming building.

Cases noted below point in a different direction.

In *Bruning Bros. v. Mayor & City Council of Baltimore,* 199 Md. 602, 87 A. 2d 589, the decision is stated accurately in this headnote: "Where corporation had begun construction of a paint factory as non-conforming use at time zoning ordinance was passed restricting area to residential uses, subsequent proposal of corporation to build an additional two story building to its factory would merely constitute a change in a non-conforming use and not an extension thereof and was therefore permissible."

In *A. L. Carrithers & Son v. City of Louisville,* 250 Ky. 462, 63 S.W. 2d 493, the decision is stated accurately in the headnote as follows: "Enlargement of milk plant in four-family zoning district to inclose space for relocating can-washing and by-products rooms to comply with health ordinance, not being a vital change of the building in its fundamental purpose, *held* not within zoning ordinance prohibiting 'structural alterations.' "

In *In re Gilfillan's Permit,* 291 Pa. 358, 140 A. 136, the line separating the residential and business districts ran through applicant's lot. Applicant's lumber plant was located in the business district. The portion of the land in the residential district was vacant and used solely as a space in which to pile lumber. It was held that he was entitled to a permit to build a cement block storage building on the vacant land then in the residential district, such additional construction not being detrimental to the public welfare, safety and health.

It is noted that, in the *Colati case,* the Court of Appeals of Maryland took the view that the non-conforming use provision of the Baltimore ordinance was to be strictly construed against the extension of non-conforming uses. This Court, in opinion by *Brogden, J.,* when dealing with an exemptive clause in a zoning ordinance, said: "Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner." *In re Appeal of Supply Co.,* 202 N.C. 496, 163 S.E. 462.

Suffice it to say that decisions in other jurisdictions, which depend largely on the wording of the particular statutes and ordinances then under consideration, reach divergent conclusions and are not controlling. Decisions are many and varied, often limited to the particular set of facts immediately before the Court. See Annotation: "Zoning: changes, after adoption of zoning regulations, in respect of nonconforming existing use." 147 A.L.R. 167, and supplemental decisions. Some ordinances, in respect of the non-conforming use provision, fix definite time limits for the absolute termination of such non-conforming use. *City of Los Angeles v. Gage,* 127 Cal. App. 2d 442, 274 P. 2d

34; *State v. McDonald,* 168 La. 172, 121 So. 613, *certiorari* denied 280 U.S. 556, 74 L. Ed. 612, 50 S. Ct. 16. Others, as indicated above, expressly prohibit *structural alterations.* Of the cases cited above, only the *Carrithers case* deals with additional construction made necessary in order to comply with the requirements of a separate and distinct ordinance.

We must keep in mind that we are here concerned with the meaning of this particular ordinance provision, to wit, Section IX, not with general and divergent views as to what such exemptive provisions as to non-conforming uses in zoning ordinances should contain. Our function is to interpret Section IX, not to legislate.

It is noted first that no time limit is placed upon the continuance of the non-conforming use. It is noted further that there is no express prohibition as to *structural alterations.* It seems clear that the words, "continued," "enlarged," "extended," were intended to refer primarily, although not exclusively, *to the purpose* for which the building and land were then being used. Obviously, the words "enlarged" or "extended" do not refer to the land itself; and the identical language is used in relation to any "building or land." This interpretation has support in the succeeding sentence, which provides: "An existing non-conforming use of a building or premises may be changed to another non-conforming use of the same or higher classification, but may not at any time be changed to use of a lower classification." A further provision of Section IX provides: "Any non-conforming building or structure damaged by fire, explosion, flood, riot or act of God may be reconstructed and used as before any such calamity . . ."

Even so, as applied to the facts before us, we think Section IX must be construed to confine the non-conforming use to its then scale of operation. Obviously, it was not contemplated that petitioners, then operating a nursing home for the accommodation of 27 patients or less, would be permitted to construct a large institutional building for the accommodation of 200 patients or more. Thus, the size of the new facility and the scale of its operation would have to conform substantially to the non-conforming use existent when the 1951 ordinance was adopted.

It is noted further that the new construction proposed by petitioners is not by reason of their choice or voluntary act, but is necessary to meet the requirements of the 1936 North Carolina Building Code. Hence, decision here need not extend beyond such a factual situation.

So far as the nursing home ban in a Residence 1 District is concerned, we conclude that petitioners have the legal right to construct or reconstruct a fireproof building where their present frame building is situated, or in lieu thereof to construct a fireproof building elsewhere on

said Lot 1, subject to the limitation that the reconstructed or new building in respect of the accommodations provided will provide facilities for the operation of a nursing home on substantially the same scale as that heretofore operated by petitioners.

Neither the application for permit nor the findings of fact certified by the Board of Adjustment disclose in detail petitioners' plans with reference to the proposed new building. A plat attached to the application shows only the location of the proposed building on said Lot 1. It appears therefrom that the proposed building would be located to the rear of the present two-story frame building, that is, farther from Sharon Lane.

When questioned at the hearing before the Board of Adjustment, Mr. O'Neal stated petitioners' plans, to the extent they had been formulated, as follows:

"I am planning to build a fireproof building of 5700 square feet. Have not planned the exact interior arrangement of the building. Have planned 12 to 14 bedrooms to accommodate around 24 patients. I propose a kitchen. The present kitchen will not be used. Have made no definite plans. The laundry will remain in the old building. We propose to use the old building for porches, sitting rooms, T.V. and other recreation facilities. We have ten bedrooms in the old building and propose 12 to 14 in the new building. We do not propose to use the old building for overflow. The only recreation factors planned are not in the old building. I have a big sitting room planned. The proposed building will be about 100 feet long. The exact dimensions are shown by the plat. I rented this piece of land for several years and bought it in 1941. I have been operating at this location since 1938. The building is a two-story frame building sitting back about 80 or 100 feet from Sharon Road.

"I have no plans for tearing down the old building. Cannot use it for my present operation. My plan is to continue to use the old building in connection with the new building in the daytime only. There will be a breezeway connecting the two buildings. I have actually laid out the interior of the building only to the architect. The plat attached to the application is the only thing I have in the way of a drawing describing the building and it is the only drawing submitted to the Building Inspection Department in the nature of a description of what we propose to build. The drawing shows a breezeway with a roof between the old and new buildings. The 24-room addition is shown only by four lines on the paper. I do not have any plans here with me."

If, upon submission of detailed plans and specifications, it appears that the new fireproof building will be a facility, comparable in size for the operation of a nursing home on substantially the same scale as

that in operation when the ordinance was adopted, the permit for the construction and occupation thereof within such limitations should be granted as a matter of right. If this should occur, the question may then arise as to whether the present two-story frame building must be used for residential purposes only in conformity with Residence 1 District restrictions, or whether the facts presented are such that the Board of Adjustment, in its discretion, will permit limited use thereof by patients resident in the new building for some or all of the purposes indicated in Mr. O'Neal's statement. In such case, it will be for the Board of Adjustment to determine whether, in its discretion, it will so exercise the power conferred upon it by Section XI of the 1951 ordinance, to wit:

"5. To vary or modify upon appeal any of the regulations or provisions of this ordinance relating to the use, construction or alteration of buildings or structures or the use of land, where in a specific case owing to special conditions a literal enforcement of the strict letter of the ordinance would result in unnecessary hardship, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done."

Thus, whether petitioners will be permitted to construct a fireproof building to be used as a nursing home in lieu of the present two-story frame building will depend solely upon their legal right to do so under Section IX as interpreted herein. As to this, there is no need or occasion for a variance permit. A variance permit is another matter. Application for a variance permit invokes the discretionary power of the Board of Adjustment. *Lee v. Board of Adjustment, supra; National Lumber Products Co. v. Ponzio,* 133 N.J.L. 95, 42 A. 2d 753. *Quaere:* Do the provisions in the 1951 ordinance (Section XI—Board of Adjustment) and in G.S. 160-178, which require the concurring vote of four members of the Board to reverse any order, requirement, decision or determination of the administrative official, *e.g.,* the Building Inspector, relate solely to matters within the discretionary power of the Board?

For the reasons stated, the judgment of the court below is vacated; and the cause is remanded so that further proceedings may be had, if petitioners are so advised, in relation to an amended application setting forth in detail their plans and specifications for the proposed new building to the end that such amended application may be considered in relation to the law as stated herein.

Error and remanded.

DEVIN, J., took no part in the consideration or decision of this case.