CITY OF BREVARD, A MUNICIPAL CORPORATION, AND L. C. CASE, BUILDING INSPECTOR OF THE CITY OF BREVARD v. JOHN F. RITTER, FRANKIE M. WAGONER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF LEWIS MOORE, EUNA ANN CANTRELL AND CHARLES MORGAN COMPANY, A CORPORATION

No. 7229SC332

(Filed 26 April 1972)

1. **Municipal Corporations § 30— private airport — construction of building — extension of nonconforming use**

   In an action to restrain defendant from constructing a building containing a lounge or club for pilots and space for the storage of an airplane on property on which a private airport is operated as a nonconforming use, the evidence was sufficient to support the trial court's finding that the building would constitute an enlargement or expansion of the airport facilities in violation of a provision of a municipal ordinance prohibiting the extension of a nonconforming use.

2. **Municipal Corporations § 30— zoning ordinance — recreational use — private airport**

   The operation of a private airport and construction of a pilot's lounge and auxiliary hangar do not constitute recreational uses within the meaning of a municipal zoning code provision which permits the use of land for "camps, parks, picnic areas, golf courses, and similar recreational uses," since under the doctrine of *ejusdem generis* the term "similar recreational uses" refers to something in the nature of a camp, park, picnic area or golf course.

APPEAL by defendant from *Falls, Judge,* from order entered 23 February 1972.

This action was instituted by City of Brevard (hereinafter called City) on 22 December 1971 seeking a temporary and permanent restraining order to prevent defendant Ritter from completing construction of a building on property then owned by defendants Wagoner and Cantrell upon which defendant Ritter had an option. Summons and copy of complaint were duly served on all defendants. By amendment to the complaint, plaintiffs alleged facts sufficient to warrant the issuance of a temporary restraining order without notice. Such an order was issued on 5 January 1972, and on 17 January 1972, after a hearing, was continued until a final adjudication of the cause. None of the defendants except John F. Ritter (hereinafter referred to as Ritter) answered the complaint. However, as to defendants Wagoner and Cantrell, it was stipulated that Ritter purchased the property on 3 January 1972, and the judgment entered on 23 February 1972 dismissed the action as to them.

City of Brevard v. Ritter

By his answer, Ritter admitted that the lands are located within a one mile radius of the city limits of Brevard; that he had an option to purchase the land; that the City on 4 January 1965 enacted a zoning ordinance which was and is applicable to the property which is zoned R-2 Medium Density Residential District; that Ritter had requested that the property be rezoned from R-2 Residential to F-1 Flood Plain Zone, and his request had been denied; that no appeal had been attempted from said decision; that structures such as apartment complexes, a medical clinic, and the Brevard Senior High School are located in the vicinity of the lands. He denied that he had contracted with the Charles Morgan Company to construct on the land a building containing approximately 3,000 square feet and that construction had begun. He further denied that the building did not constitute the repair or rebuilding or alteration of an existing structure, nor replacement of any existing structure and constituted a violation of § 70 entitled "Non Conforming Uses" and § 51 entitled "R-2 Medium Density Residential District" of the City Zoning Ordinance. He further denied that the building did "not constitute a single family dwelling, a farm or related agricultural use, or any camp, park, picnic area, golf course or similar recreational use."

By his further answer, he averred that he had begun construction of a building on the property which would be used as a "pilot clubhouse to be used by persons now patronizing the small airport runway on the land described in the plaintiffs' Complaint, that the building under construction by the defendant Ritter will not extend or enlarge the existing airport runway nor extend nor enlarge the existing use of the airport runway and other airport facilities." He further averred that the property was then used and would continue to be used as recreational premises "which are lawful within the terms of Section 51 of the Brevard zoning ordinance."

The parties agreed that the matter would be heard upon facts stipulated and submitted to the court and that "the application and trial for a permanent injunction could be heard by the Court out of term and out of District." The facts stipulated by the parties are as follows:

"1. That the defendant, John F. Ritter, on the 3rd day of January 1972, purchased the lands and premises described in paragraph 7 of the plaintiff's complaint.

2. That there has been located upon said lands a private airport for approximately 15 years and that in December of 1971 there were 3 open aircraft hangars and one metal storage building located upon said premises which are used in conjunction with the airport which consists of a grass or dirt runway approximately 1,000 feet to 2,000 feet in length.

3. That the metal storage building is approximately 12 x 15 feet and constructed of metal siding and without windows; that said building is used as an office and headquarters for the airport and contains a desk, a snack machine and a soft drink machine for use by persons patronizing the airport, plus a phone, aircraft navigational radio equipment, oil, pilot supplies, tie down equipment, etc.; that Exhibit 1 is a fair and accurate representation of said building.

4. That the area encompassed by the presently existing airport is frequently flooded by the French Broad River. The banks of the river are approximately 250 feet from the southeast margin of the airport runway. This area was included within the flood plain area under the Land Use Plan which was adopted by the City of Brevard on January 4, 1965, a copy of which plan is attached hereto marked as Exhibit 2.

5. That one metal hangar building contains 3 T-Hangars and the other 2 metal hangar buildings each contain 2 T-Hangars, and said hangar buildings are constructed of corrugated metal and do not have heat or electricity, and that photographs marked Exhibits 3, 4, and 5 are a fair and accurate representation of some of the hangar buildings located upon said premises.

6. That in December 1971, the defendant, John F. Ritter, began constructing a new building which was to take approximately three thousand square feet, which upon completion was to be used as a pilot clubhouse containing such facilities as restrooms, chairs, tables, and food and drink dispensing machines, etc.; that the clubhouse of the building will have dimensions of approximately 20 x 42 feet, serving as a lounge and recreation area as described above. That immediately adjoining the club or lounge area, and as a part of the same building, will be an area ap-

proximately 51 x 34 feet which is also subject for use in extended social activity or recreation, and which will be of sufficient size to permit the storage of one small aircraft.

7. That as of December 1971 construction of the building had progressed to the point of completion of the foundation and concrete base and the erection of studs around the perimeter of the building, as well as the erection of a metal beam support located across the front or face of said building. Photograph marked as Exhibit 6 is a fair and accurate representation of the building as it existed at the time this lawsuit was instituted.

8. That said new building is not connected with any of the prior existing buildings and upon completion was to be completely separate and apart from any other existing improvements located upon said premises.

9. That in December of 1971 the defendant, John F. Ritter, purchased the improvements located upon the airport premises referred to in plaintiff's complaint from a previous tenant from the sum of $600.00, which improvements included the airplane hangars and metal buildings and gas tank and pump, which gas tank and pump is fairly and accurately represented by a photograph marked Exhibit 1.

10. That the Brevard High School, Athletic Field and bus maintenance garage are adjoining the airport located to the southwest of the airport runway and there are two large apartment complexes located to the northwest of the airport runway, one containing 20 units and the other containing 50 units and there is under construction a new medical clinic to the side of and within approximately three hundred feet of the airport premises situated to the northwest.

11. That by letter dated August 4, 1971, marked as Exhibit 7, the defendant, John F. Ritter, requested the City of Brevard to rezone the airport premises from a R-2 Residential zone to a F-1 Flood Plain zone; that said defendant with such request submitted a map marked as Exhibit 8 depicting said airport property and airport runway.

12. That at a regularly scheduled meeting of the Board of Aldermen for the City of Brevard on October 18, 1971, the defendant's zoning request was considered; the Board of

Aldermen for the City of Brevard accepted the recommendation of the Brevard Planning and Zoning Board which was to deny said zoning request.

13. That on the 13th day of December, 1971, at 7:00 o'clock the Board of Aldermen of the City of Brevard held a special meeting at which Mr. John F. Ritter was present. That the City Clerk, Mrs. Opal Armentrout, was present and recorded the minutes of said meeting a copy of which minutes are attached hereto marked as Exhibit 9.

14. That the defendant, John F. Ritter testified that he intended to organize a Flying Club, and that a portion of the building under construction would be usable as a hangar for a small airplane.

15. That the said John F. Ritter did not contact (sic) with the Charles Morgan Company to construct his new building but that the Charles Morgan Company did in fact lend to him certain trucks and employees who have performed portions of the construction work until said company and the defendant, John F. Ritter, were temporarily restrained from continuing said construction.

16. That the plans of the new structure, which was being constructed prior to the temporary restraining order entered in this cause which was being built by the defendant, John F. Ritter, are attached to the Stipulation of Facts and made a part thereof and marked as Exhibit 10.

IT IS STIPULATED AND AGREED by and between the plaintiffs and the defendant, John F. Ritter, that the controversy in the above-entitled case can be submitted to the Court based upon the foregoing stipulation of facts."

From judgment entered permanently restraining defendants Ritter and Charles Morgan Company from "constructing the pilot lounge clubhouse and auxiliary hangar or extending or enlarging the airport facilities" and directing Ritter to remove within 90 days the portion already completed, the defendant Ritter appealed.

*Williams, Morris and Golding, by James N. Golding, for plaintiff appellees.*

*Van Winkle, Buck, Wall, Starnes and Hyde, by Emerson D. Wall, for defendant appellant.*

MORRIS, Judge.

Appellant excepts to findings of fact numbered 23 and 24 as follows:

"23. That the defendant, John F. Ritter, intends to utilize the new construction in conjunction with the other airport facilities located upon the aforementioned premises, and such construction will in fact constitute an enlargement or expansion of said airport facilities in violation of Section 70 of the Brevard Zoning ordinance entitled 'Non-conforming uses.'

24. That said structure does not constitute any of the permitted or authorized uses designated by Sections 50 and 51 of the Brevard Zoning ordinance, and this Court specifically finds that such construction does not constitute 'any camp, park, picnic area, golf course or similar recreational use' under either Section 50 or 51 of the Brevard Zoning ordinance."

and to conclusions of law numbered 1 and 2 as follows:

"1. That the building presently under construction by the defendant, John F. Ritter, with the assistance of the Charles Morgan Company, is in violation of Sections 50, 51 and 70 of the Brevard Zoning ordinance, and such construction is unlawful and should be restrained.

2. That the construction of a pilot lounge or clubhouse and auxiliary hangar constitutes an enlargement and extension of a nonconforming use in violation of Section 70 of the Brevard Zoning ordinance, since no such structure now exists and such construction does not constitute the repair or remodeling of any existing structure."

These exceptions and an exception to the signing and entry of the judgment are grouped by appellant into two assignments of error. We do not separate them for the purpose of discussion.

The property of appellant is admittedly covered by § 51 of the Brevard Zoning Ordinance entitled "R-2 Medium-Density Residential District." The declared purposes of this type district are, among others, to provide for quiet liveable medium density single and two family neighborhoods, to encourage the discontinuance of nonconforming uses, and to prohibit any use

which would substantially interfere with the development or continuation of single and two family dwellings. Uses permitted are two family dwellings and any use permitted in the R-1 Low Density Residential District. These uses are single family dwellings; farms and related agricultural uses; and camps, parks, picnic areas, golf courses and similar recreational uses.

It is also conceded that the airport on the property is a nonconforming use. Section 70 of the ordinance provides that the nonconforming use may be continued but specifically provides that it may not be extended.

[1] Appellant urges that the facts pleaded and stipulated do not support the finding that the new construction will constitute an enlargement or expansion of the airport facilities, and therefore, it was error for the court to conclude that § 70 had been violated. We do not agree.

It is clear from the facts stipulated that the building under construction is to contain approximately 3,000 square feet, is completely new construction and is not connected in any way to any of the existing structures on the land. It could not, in any way, be regarded as repair, rebuilding, or alteration of any existing structure. Neither could it be considered as a replacement for any existing structure. It would contain, in addition to the lounge or club, space for the storage of an airplane. Ritter purchased all of the physical improvements on the property for $600. Exhibit No. 7, before the Court and a part of the stipulated facts, is a letter addressed to the Board of Aldermen of Brevard requesting the rezoning of the property. It bears the signature "John F. Ritter," and contains the following: "The reason we would like this area rezoned is so that the present airport facility can be expanded and improved." Exhibit No. 9, also before the Court and a part of the stipulated facts, is a copy of the minutes of the meeting of the Board of Aldermen on 13 December 1971. At that meeting, Ritter stated "Very few planes would be coming in and out, perhaps triple as to the present number." We think the evidence plenary to support the court's finding of fact.

*In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189 (1956), is not authority for appellant's position.

[2] Nor do we find merit in appellant's position that the building he proposes to create is a lawful recreational use within the

meaning of the permitted use contained in § 50.2 of the Zoning Ordinance, to wit: "camps, parks, picnic areas, golf courses, and similar recreational uses." "It is a well-settled rule of construction, applicable to statutes and ordinance that under the doctrine *ejusdem generis,* when enumerations by specific words or terms are used, and they are followed by general words or terms, the general shall be held to refer to the same classification as the specific. . . . " *Bryan v. Wilson,* 259 N.C. 107, 110, 130 S.E. 2d 68 (1963), quoting from *Chambers v. Board of Adjustment,* 250 N.C. 194, 108 S.E. 2d 211 (1959). The term "similar recreational uses" must obviously refer to something in the nature of a camp, a park, a picnic area, or a golf course. We find no similarity in the operation of a private airport and construction of a pilot's lounge and auxiliary hangar to the activities of a camp, a park, a picnic area, or a golf course.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.