TATE, Judge.
This is a suit to enjoin an alleged violation of zoning regulations, the commercial úse of property in an area zoned residential. The defendant landowner appeals from adverse judgment permanently enjoining the use of his premises for commercial purposes.
The trial court sustained the plaintiff’s contention that the defendant had lost whatever right he had to a nonconforming use of the property by a discontinuance of such use for more than thirty months. Because we find that (as a matter of law) there was no discontinuance of the nonconforming use, it is unnecessary to discuss contentions by the defendant-appellant that this suit has prescribed and that under the present municipal ordinance a nonconforming status is not lost through a discontinuance of the nonconforming use.'
The plaintiff Kinard and the defendant Carrier own adjoining properties in Lake Charles. The property was zoned residential by comprehensive city zoning ordinances of 1956 and 1959. Both prior to and subsequent to adoption of these zoning ordinances, namely, from 1948 until early in 1962, the defendant Carrier used-his premises for a commercial establishment. The property then became vacant due to Carrier’s inability to obtain a tenant for the property. Tr. 13, 15. The commercial building was not altered or used for any other purpose during its vacancy.
In June 1964, after this vacancy of thirty months, Carrier again leased the property for use for commercial purposes.[1] Immediately upon the commencement of commercial operations on the premises, this suit was filed to enjoin same. • The plaintiff-appellee contends that Carrier lost his right to the continued nonconforming commercial use of the property because of its non-use for commercial purposes during this thirty months vacancy.
Unlike most zoning ordinances [2], the Lake Charles ordinance does not contain any specific provision providing for nonconforming use of the zoned property, nor providing for use only in conformity with the zoning ordinance after a nonconforming use has been discontinued or has ceased for any specified period of time. Within the zoning ordinance there is. no provision whatsoever authorizing the nonconforming use (e. g., for commercial purposes) of property within a residential zone.
How;ever, the municipal zoning regulations were, enacted pursuant to the authority to do so granted municipalities by Act 240 of 1926, LSA-R.S. 33:4721 and following. This enabling statute specifically provides that no municipal regulation adopted pursuant to the act. “* * * shall change the status of premises which have been continuously used for commercial purposes since January 1, 1929, without interruption for more than six consecutive months at any one time.”. LSA-R.S. 33 :- 4722. Under this provision of state law, therefore, the defendant Carrier’s contin *922 ued nonconforming use of his property could not be prohibited by adoption of the municipal ordinance, except perhaps for a discontinuance for more than six consecutive months of his commercial use of the property.[3]
The case was argued below on the assumption that the commercial use of the property was discontinued during the thirty months the commercial building thereon was vacant due to the inability of the defendant owner to secure a tenant for it. In fairness to our learned trial brother, we should note that for the first time on appeal was the issue made that the vacancy of commercial property under such circum-' stances does not constitute a discontinuance of the commercial use of the property so as to lose for its owner his right to the property’s continued nonconforming status. This, however, is the prevailing law in American jurisdictions, in the absence of a specific provision in the municipal zoning ordinance providing otherwise.
As stated in the Annotation, Zoning — Resuming Nonconforming Use, 18 A.L.R.2d 725 at 745, 746: “The temporary interruption or suspension of a nonconforming use without substitution of a conforming one or without a definite and substantial departure from previously existing conditions caused either by accident or by unpropitious circumstances over which the owner had no control does not terminate the right of the owner to resume the nonconforming use of the property. * * * A particular instance of a mere suspension of nonconforming use is the one caused by the owner’s inability to find a tenant or to sell his property.” See also 8 McQuillin, Municipal Corporations (3rd ed., 1957) Section 25:196, p. 496.
 Further, it is stated at 101 C.J.S-“Zoning” § 199 at pp. 964-965: “In the-absence of a statute otherwise providing, cessation of use does not of itself work an abandonment, but the duration of nonuse is an important factor in determining whether or not the nonconforming use has been-abandoned. Accordingly, unless so provided in the zoning ordinance, the cessation or discontinuance of a nonconforming use without the substitution of another use or without evidence of an intention to abandon the nonconforming use will not prevent a resumption of the nonconforming use. Abandonment of a nonconforming use is not to be assumed from the fact that a building is permitted to remain vacant and periods of interruption of use due to-lack of demand, inability to get a tenant,, and financial difficulty do not change the character of the use.”
The application of these principles does-not seem ever to have been at issue in any reported Louisiana case. However, we found no decisions from other American jurisdictions reaching results clearly inconsistent with these legal principles, while among those decisions which have held in accordance therewith are:
Douglas v. Village of Melrose Park, 389 Ill. 98, 58 N.E.2d 864 (1945), a nonconforming use was held not discontinued during a vacancy due to the owner’s inability to secure tenants for it; Haulenbeek v. Borough of Allenhurst, 136 N.J.L. 557, 57 A.2d 52 (1948), inability to operate hotel, a nonconforming use, for three years, due to lack of tenant, financial difficulty and lack of demand, did not change character of use to require conforming compliance with zoning ordinance; National Lumber Products Co. v. Ponzio, 133 N.J.L. 95, 42 A. *923 2d 753 (1945), dosing down of lumber yard for three years due to financial difficulty until purchased by another party did not constitute abandonment or discontinuance of permissible nonconforming use; McCoy v. City of Knoxville, 41 Ill.App.2d 378, 190 N.E.2d 622 (1963), termination of service station lease, a nonconforming use, was permitted to be resumed where due to inability to secure new tenants for building for two years after initial lease termination; Appeal of Langol, 175 Pa.Super. 320, 104 A.2d 343 (1954), a nonconforming use of property as a restaurant with a retail liquor license was not abandoned even though there was a vacancy for more than a year and owners attempted to rent the property for the nonconforming use; Wood v. District of Columbia, D.C.Mun.App., 39 A.2d 67 (1944), nonconforming use of building as a stable was not abandoned during vacancy of six years since the building was retained in same condition and was advertised for lease as a stable. See also: Dobbs v. Board of Appeals of City of Northampton, 339 Mass. 684, 162 N.E.2d 32 (1959), which held that a vacancy over three years did not constitute a discontinuance of the nonconforming use when due to the inability to secure tenants (although the court on other grounds denied a permit for the nonconforming use in question).
The decision of our state Supreme Court in Onorato v. Rossignol, 217 La. 751, 47 So.2d 489, is not inconsistent with these decisions or the legal principles above stated. There, a dry-cleaning establishment was held to have lost its nonconforming status in a residential area because the property had been vacant for over two years. However, in that instance (unlike the present), the municipal zoning ordinance applicable specifically provided a nonconforming status was lost if the nonconforming building remained vacant continuously for more than six months.
As earlier noted, the Lake Charles ordinance applicable to the present case contains no such provision. At best, the zoning ordinance’s[4] regulation is to the effect that an authorized nonconforming commercial status is preserved by commercial use without interruption for six months continuously, which the plaintiff interprets as providing that a nonconforming commercial status is lost if the commercial use is discontinued or interrupted for more than six months. Under the preponderant jurisprudence above-cited, however, a vacancy due to the inability to secure tenants does not constitute a discontinuance, interruption, or abandonment of such nonconforming commercial use. The Onorato decision is thus distinguishable as containing differing de» cisional facts, and its holding is not pertinent to the present case.
For the foregoing reasons, we find the defendant Carrier did not lose his right to the nonconforming use of his property through any discontinuance or abandonment on his part of its use for commercial purposes. Accordingly, the judgment of the trial court must be reversed, and the plaintiff’s suit dismissed. The cost of these proceedings are to be paid by the plaintiff-ap-pellee.
Reversed and rendered.

. No contention is made in tliese proceedings that the new commercial use should be enjoined as more onerous or an enlargement or of a substantially different character than the former commercial use, and our ruling herein is expressly not intended to concern any cause of action based upon any sucli contentions.'

. See 8 McQuillin, Municipal Corporations (3rd ed., 1957), Section 25.198, p. 490; Annotation, 18 A.L.R.2d 725.

. This was the construction of the statute adopted by the trial court, applying the presumption of its validity as a valid exercise of the zoning regulation powers delegated to the municipality by LSA-R.S. 33:4721 et seq., see Sears, Roebuck & Co. v. City of Alexandria, La.App. 3 Cir., 155 So.2d 776. The defendant-appellant disagrees with this construction of the statute; but it is unnecessary for us to pass upon this party’s contentions, because even under the trial court’s construction we do not find that there was any discontinuance of the nonconforming use for more than six consecutive months. See discussion in text below.

. I. e., in the light of LSA-R.S. 33:4722 of the enabling statute.