## Whitehall v. Zoning Hearing Board of Lower Merion Township

*William J. Fuchs*, for appellant.

*Robert S. Ryan* and *William Manning*, for appellee.

TREDINNICK, J., December 28, 1972.—Appellant, Whitehall, is the owner of Whitehall Apartments, a resident hotel situate at 410 Lancaster Avenue, Haverford, Lower Merion Township, in an area zoned R6A residential. An apartment use is permitted within the district, but both restaurant and office uses are not. Nevertheless, previous owners conducted a restaurant business on the ground floor of the property for a number of years as a nonconforming use. Actual use of the area as a restaurant ceased in 1960. In 1971, appellant applied to the Zoning Hearing Board for authorization to change its use of the ground floor from a nonconforming restaurant use to a nonconforming office use under the provisions of section 2100(3) of the Lower Merion Township Zoning Ordinance. Alternatively, in the event the nonconforming restaurant use be considered abandoned, appellant requested that it be granted a special exception to

resume such use, as authorized by section 2100(5) of the ordinance, following which a change to office use would be appropriate. The Zoning Hearing Board refused both applications, and Whitehall appealed.

Section 2100(3) of the ordinance provides the following:

"*CHANGES.* If no structural alterations are made, any nonconforming use of a structure, or structure and premises, may be changed to another nonconforming use of the same or more restricted classification, provided that the Board of Adjustment shall find that the proposed use is equally appropriate, or more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Adjustment may require appropriate conditions and safeguards in accord with the provisions of this Ordinance."

Succinctly stated, the position of the Zoning Hearing Board is that this section applies only when the nonconforming use is actually physically existent at the time the request for change is originated. Thus, since the restaurant use had not been actually conducted upon the premises for a period of over 10 years, and was not being conducted at the time the application for change was made, then, whether or not it had been abandoned in the legal sense is immaterial, the applicant has not brought itself within the terms of the Ordinance. Had the language of the ordinance specifically stated this concept, we would agree, for the right to *change* a valid nonconforming use is not constitutionally protected, but rather is governed only by the terms of the applicable ordinance: Hanna v. Board of Adjustment, 408 Pa. 306, 313-14 (1962). That is not the case, however; section 2100(3) simply refers to the allowance of a change, under certain conditions, of "any nonconforming use."

It is quite clear that a "nonconforming use" may exist in law even though it may not exist in fact. As one example, zoning ordinances most commonly recognize the legal existence of a nonconforming use within a year after such use has actually ceased, and, indeed, in section 2100(5) of the Lower Merion ordinance, just such recognition is accorded. More than that, decisional law of this Commonwealth has established that a nonconforming use exists legally until abandoned, and this is not necessarily dependent upon actual cessation of the use: Haller Baking Company's Appeal, 295 Pa. 257 (1929).

In the light of the foregoing, we must assume that the Commissioners of Lower Merion used the words "any nonconforming use" in section 2100(3) in their ordinary accepted sense, that is, to include any such use legally in existence. Hence, we conclude that the Zoning Hearing Board was in error in rejecting the proposed change because the alleged nonconforming restaurant use was not actually in operation at the time of the application.

That is not the end of the case, however, since the hearing board concluded as a matter of fact that the restaurant use had been abandoned. Obviously, if that were so, the applicant would have no right to a change of use under section 2100(3). The applicant presented uncontradicted testimony that the prior owner attempted to obtain a new restaurant tenant from 1960 until 1964, when the property was purchased by Whitehall, and that since then, Whitehall has continued such efforts until finally, it became economically unfeasible not to seek another use for the space, and this application was filed.

"A finding of abandonment requires proof of an intent to relinquish the use voluntarily, or proof of facts

from which such an intent can be inferred . . . The burden of establishing that a nonconforming use has been 'abandoned' is on the municipality, or upon the protestants . . .": Ryan, Pennsylvania Zoning Law and Practice, section 7.3.1 (Bisel, 1970). No evidence was presented as to abandonment by the municipality or protestants; indeed, there were no protestants. Thus, all that opposes the applicant's evidence that there was no intent to abandon is the lapse of more than 10 years since the property was last actually used for restaurant purposes. But the mere passage of time does not establish abandonment: Null v. Zoning Board of Adjustment, 10 D. & C. 2d 605, affirmed per curiam, 391 Pa. 51 (1958).

In Munhall Borough Council Appeal, 175 Pa. Superior Ct. 320, 326 (1954), where a property had been vacant for more than one year, the court held that attempts by the owners to rent the property during the period showed ". . . no intention to abandon the nonconforming use and consequently the use was not 'discontinued' in legal contemplation." It is true, as intimated by the provisions of section 2100(5) of the ordinance, that a municipality may legislatively provide that a cessation of use for more than a year indicates an intent to abandon. But such a limitation has no application to situations where the cessation of use was beyond the control of the property owner: Marchese v. Norristown Borough Zoning Board of Adjustment, 2 Comm. Ct. 84 (1971). In that case, the court noted, page 100: ". . . a temporary cessation, even for a lengthy period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of . . . abandonment."

Accordingly, we hold that the burden of establish-

ing abandonment of the nonconforming use has not been met, and that the board, therefore, abused its discretion in so finding.

It follows that the decision of the board must be reversed. The record establishes that the other requisites to authorization for a change of use set forth in section 2100(3) can be met by the applicant. No structural alterations are needed to accomplish the change; the proposed office use is of the same classification as the restaurant use; and finally, the use is at least "equally appropriate." That section provides, however, that the board "may require appropriate conditions and safeguards in accord with the provisions of this Ordinance."

We therefore, enter the following

### ORDER

And now, December 28, 1972, the Appeal of Whitehall, a Pennsylvania limited partnership, from the decision of the Zoning Hearing Board of Lower Merion Township is sustained, the order of the board reversed, and the requested change of use approved, subject only to such appropriate conditions and safeguards as the board may impose in accordance with the provisions of the zoning ordinance for which purpose the matter is remanded for a further hearing, if necessary.