DUKE POWER COMPANY v. CITY OF HIGH POINT, ET AL.

No. 8318SC776

(Filed 3 July 1984)

**1. Municipal Corporations § 23.3— furnishing electric service outside city limits**
    G.S. 160A-312 is the sole legislative authority for and the only restriction upon municipalities furnishing electric service outside their corporate limits.

Duke Power Co. v. City of High Point

2. **Electricity § 2.6; Municipal Corporations § 23.3— furnishing electric service outside city limits—reasonable limitations**

   Pursuant to G.S. 160A-312, a city has absolute authority to extend electric service to privately-owned premises within the corporate limits as well as to city-owned operations, whether inside or outside the corporate limits; further, the city is granted limited, rather than absolute, authority to provide electric service outside the corporate limits, so long as such service is within reasonable limitations.

3. **Electricity § 2.3; Municipal Corporations § 23.3— furnishing electric service outside city limits—pre-annexation construction of system**

   The provisions of Part 2, G.S. 160A-331 to G.S. 160A-338, do not affect a city's right pursuant to G.S. 160A-312 to extend electric service outside its corporate limits; therefore, though the strategy of defendant city, who was a secondary supplier of electricity, to begin construction of its electric lines in the outlying territory after its annexation plan was enacted but before it became effective might result in the loss of potential post-annexation rights of plaintiff secondary supplier, nothing in the 1965 Electric Act restricts municipalities from adopting and implementing such strategy.

4. **Electricity § 2.1— rights of secondary supplier**

   The absolute right of a secondary supplier of electricity to serve customers within its 300-foot corridor arises upon the effective date of annexation by a municipality, statutorily defined as the "determination date." G.S. 160A-332.

5. **Electricity § 2.1; Municipal Corporations § 23.3— furnishing electric service outside city limits—reasonableness**

   In determining the reasonableness of a city's proposed extension of electric service pursuant to G.S. 160A-312, the court will consider the level of current service in the territory in question, the readiness, willingness, and ability of each competitor to provide electric service, the location of the territory in relation to the city limits, and the existence of any annexation plan by the city; however, this list of factors is not exclusive, and the court will consider all the facts and circumstances within each case before determining the reasonableness of a proposed extension.

6. **Electricity § 2.1; Municipal Corporations § 23.3— furnishing electric service outside city limits—reasonableness**

   Defendant city's proposed extension of electric service was within reasonable limitations pursuant to G.S. 160A-312 based upon the city's subsequent annexation of the area, the city's long-term cost savings by providing its own service, and the State's policy upholding the purpose of the city's proposed extension—that of providing street lights within the newly-annexed area.

APPEAL by plaintiff and defendant from *Hobgood, Hamilton, Judge.* Judgment entered 24 February 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 2 May 1984.

Both parties appeal from an order authorizing the City of High Point to construct electric lines for the purpose of providing street lights into an annexation area north of the City assigned to Duke by the North Carolina Utilities Commission.

Duke Power Company (Duke), an investor-owned public utility and the City of High Point (the City), a municipal corporation, currently provide electric service both within and outside the city limits of High Point. Prior to 1969, Duke provided electric service within the city limits pursuant to a franchise with the City. The franchise, which expired in 1969, contained a clause limiting Duke from selling electric lights or current in opposition to the City. Duke provides electricity in the annexation area outside the city limits pursuant to an assignment made to it in 1967 by the North Carolina Utilities Commission.

On 2 April 1981, the City enacted an ordinance annexing an area approximately six square miles north of the corporate city limits. The effective date of annexation was to have been 31 March 1982, but because of another lawsuit contesting the annexation, the area had not been annexed at the time of the trial of this case.

In the fall of 1981, the City advised Duke of its intention to extend electric lines into the annexation area for the stated purpose of providing street lights. Duke objected and commenced this action to enjoin the City from extending lines and thereby duplicating Duke's existing electric lines in the proposed annexation area. On 18 December 1981, the trial court, Judge Kivett presiding, issued a temporary restraining order enjoining the City from extending electrical lines into the proposed annexation area. On 27 January 1982, pursuant to Duke's motion, the trial court, Judge Helms presiding, issued a preliminary injunction further enjoining the City from extending its electric lines. Had the City not been thus enjoined, it could have completed the proposed line extension before 31 January 1983.

At the trial on the merits, the trial court, Judge Hobgood presiding, found in pertinent part: Duke currently serves approximately 1,411 residential, industrial, and commercial establishments within the City and provides approximately 260 street lights within the City paid for by the City. Duke serves electricity to approximately 1,347 premises within the annexation area and

provides approximately 30 street lights to a subdivision within the annexation area paid for by the subdivision association.

The City currently provides electricity to approximately 23,699 residential customers, of which 132 are served by City electric distribution lines outside the corporate limits. The City provides electricity to 2,137 commercial customers, of which approximately nine are served by city distribution lines outside the corporate limits.

Both Duke and the City are currently furnishing adequate, continuous and reliable electric service to customers within and outside the corporate city limits. Duke is presently serving customers within the annexation area and is capable of furnishing service within presently unserved portions of such area. The City is capable of furnishing service within the annexation area if it is allowed to construct its own electrical distribution system. The City's proposed construction would at some points parallel and cross Duke's existing lines. The evidence showed that the City's estimated cost of construction would amount to $175,000 to $250,000. Even so, the City estimated that it could furnish street lighting within the annexation area at a cost of $1.00 per street light per month cheaper than could Duke.

The annexation area is an attractive, high growth suburban area. Duke's expressed opposition to the City's extension of its lines in the annexation area is not to the provision by the City of street lighting, but to the potential rights the City may thereby acquire to serve and sell electricity to residential customers in the area.

The trial court concluded as a matter of law that the proposed extension by the City of its lines in the annexation area was within reasonable limitations and lawful. In reaching this conclusion, one of the facts and circumstances the Court considered was the future status of Duke once the area is annexed. The Court concluded that Duke would become a "secondary supplier" on the effective date of annexation and ordered that the preliminary injunction be dissolved and that the City proceed to construct its electric lines within the annexation area.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Daniel W. Fouts and W. Winburne King, III, for plaintiff.*

*Spruill, Lane, Carlton, McCotter & Jolly, by John R. Jolly, Jr., Ernie K. Murray, and J. Phil Carlton, for defendant.*

VAUGHN, Chief Judge.

## I.

We first address Duke's appeal from the trial court order authorizing the City to extend its electric lines to an annexation area outside the corporate limits for the stated purpose of providing street lights. We have, in determining the City's right to extend electric service, divided our analysis into three sections. In Section A, we discuss the pertinent statutory provisions contained in Chapter 160A of the General Statutes and specifically the two bases of authority under G.S. 160A-312 authorizing the extension of service outside of a municipality. In Section B, we analyze the dichotomy between a City's rights to extend electric service outside City limits under G.S. 160A-312 and its rights to extend such service within City limits under G.S. 160A-331 to 160A-338 and we refute Duke's contention that a City's rights under G.S. 160A-312 are subject to the provisions of G.S. 160A-331 to 160A-338. Finally, in Section C, we examine the lawfulness of the City's extension in this case pursuant to G.S. 160A-312. For reasons herein set forth, we hold that such extension met the reasonable limitation standard imposed by G.S. 160A-312, the sole legislative restraint on the City's pre-annexation rights to extend electric service outside City limits.

## A.

The provisions of Chapter 160A, Article 16 of the General Statutes define a city's right to construct and operate "public enterprises." Part 1 of Article 16, codified as G.S. 160A-311 through G.S. 160A-323, concerns, in general, the operation of "public enterprises," while Part 2 of Article 16, codified as G.S. 160A-331 through G.S. 160A-338 concerns specifically the operation of electric power generation and service within the corporate limits of a city. Contained in Part 1 of Article 16 is G.S. 160A-311, which defines the term "public enterprise" to include electric power generation, transmission, and distribution systems. Also

contained in Part 1 is G.S. 160A-312, the statute we are asked to interpret in this case.

[1]  The Supreme Court, in three decisions fundamental to the issues herein has established G.S. 160A-312 as the sole legislative authority for and the only restriction upon municipalities furnishing electric service outside their corporate limits. *State ex rel. Utilities Comm. v. Virginia Elec. and Power Co.*, 310 N.C. 302, 311 S.E. 2d 586 (1984); *Lumbee River Electric Corp. v. City of Fayetteville*, 309 N.C. 726, 309 S.E. 2d 209 (1983); *Electric Service v. City of Rocky Mount*, 285 N.C. 135, 203 S.E. 2d 838 (1974). G.S. 160A-312 does not affect a city's right to furnish electric service to a newly annexed territory *within* corporate limits, such right being determined solely by the provisions of Part 2, G.S. 160A-331 to G.S. 160A-338. We recognize that at the time of this action, the City had enacted an ordinance to annex the area in question and that at the time of this appeal, the area had been effectively annexed. *See McKenzie v. City of High Point*, 61 N.C. App. 393, 301 S.E. 2d 129, *review denied*, 308 N.C. 544, 302 S.E. 2d 885 (1983) (affirming the validity of the annexation ordinance). Nevertheless, for purposes of this appeal, we treat the area in question as lying outside the corporate City limits. While controversies arising after annexation concerning the City's right to extend electric service to the newly annexed territory are governed by G.S. 160A-331 to G.S. 160A-338, controversies arising before annexation concerning the City's right to extend electric service to a future annexation area are governed by G.S. 160A-312.

[2]  G.S. 160A-312, in its first two sentences, provides two distinct bases authorizing the operation of a public enterprise, including an electric power system by a city outside its corporate limits. The first sentence of G.S. 160A-312 provides: "A city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises as defined in this Article to furnish services to the city and the citizens." We interpret this part of the statute as granting the City absolute authority without limitation or restriction to provide electric service for the benefit of the City itself or its citizens, *i.e.*, those who live within the corporate limits. Pursuant to this part of the statute, a city has absolute authority to extend electric service to privately-owned "prem-

ises"[1] within the corporate limits as well as to city-owned operations, whether inside or outside the corporate limits. It is upon this basis that we relied in the companion case filed simultaneously herewith in affirming the lawfulness of the City's extension of electric lines to three facilities—a pollution control plant, a garbage pulverizer plant, and a police academy—owned and operated by the City. *Duke Power v. City of High Point #1* (filed 3 July 1984).

The second sentence of G.S. 160A-312 provides:

Subject to Part 2 of this Article, a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate any public enterprise outside its corporate limits, within reasonable limitations, but in no case shall a city be held liable for damages to those outside the corporate limits for failure to furnish any public enterprise service.

We follow Supreme Court precedent in interpreting this part of the statute as granting the City limited, rather than absolute, authority to provide electric service outside corporate limits. This part of the statute provides the second basis authorizing a city to extend service outside corporate limits as long as it is "within reasonable limitations." *See State ex rel. Utilities Comm. v. Virginia Elec. and Power Co., supra* (hereinafter *Vepco*); *Lumbee River Elec. Corp. v. City of Fayetteville, supra* (hereinafter *Lumbee River*); *Electric Service v. City of Rocky Mount, supra* (hereinafter *Rocky Mount*). Since the street lights in this case were to be constructed and were intended to benefit those outside city limits, the City's authority in this case to extend electric service in order to provide street lighting emanates from the second basis of G.S. 160A-312.

B.

[3] Duke contends that the City's right to extend electric service to the annexation area in this case is subject not only to the reasonable limitation standard contained in G.S. 160A-312, but also to the provisions of G.S. 160A-331 to G.S. 160A-338, incorporated by reference in G.S. 160A-312. Duke bases its argument

---

1. "Premises" are defined in G.S. 160A-331(3) as "the building, structure, or facility to which electricity is being or is to be furnished."

on the clause in the second sentence of G.S. 160A-312 providing that the City's rights are "[s]ubject to Part 2 of this Article," codified in G.S. 160A-331 to 160A-338. Though we disagree with Duke's proposed interpretation of G.S. 160A-312, we recognize and discuss in this section the dichotomy underlying Duke's appeal between the City's rights under G.S. 160A-312 to extend electric lines before annexation and City's rights under G.S. 160A-331 to 160A-338 to extend such lines after annexation.

The dichotomy is the result of legislation enacted in 1965 which both authorizes and restricts the rights of a city extending electric lines within its corporate limits, but has no application to a city extending lines outside its corporate limits. The 1965 Electric Act, enacted in an effort to curtail litigation and prevent wasteful duplication of transmission and distribution systems between investor-owned power companies and electric membership corporations, is contained in two parts: One part, codified as G.S. 62-110.2, sets out the rights of electric membership corporations and public utilities vying for customers outside city limits, but has no effect on the rights of a city supplier. *See Rocky Mount, supra.* The other part, codified as G.S. 160A-331 to G.S. 160A-338, sets out the rights of all suppliers, including a municipal supplier, but affects only those rights within corporate limits and has no effect on competitive rights outside city limits. Our discussion herein focuses on the provisions of 160A-331 to 160A-338.

Had the City begun construction of its electric distribution system *after* annexation, its and Duke's rights as competing electric suppliers would have been determined by the provisions of Article 2, G.S. 160A-331 to G.S. 160A-338. Born upon the effective date of annexation, statutorily defined as "the determination date," are the rights of "primary" and "secondary suppliers." G.S. 160A-331. G.S. 160A-331(4) defines "primary supplier" as "a city that owns and maintains its own electric system, or a person, firm, or corporation that furnishes electric service within a city pursuant to a franchise granted by or contract with, a city, or that, having furnished service pursuant to a franchise or contract, is continuing to furnish service within a city after the expiration of the franchise or contract." G.S. 160A-331(5) defines "secondary supplier" as "a person, firm, or corporation that furnishes electricity at retail to one or more consumers other than itself within the limits of a city but is not a primary supplier. . . ." Essential

to Duke's argument is the assumption that upon the effective date of annexation, it will become a "secondary supplier," the City, a "primary supplier."

Had construction occurred after annexation, Duke would have had guaranteed rights pursuant to G.S. 160A-332, which defines and limits the rights of competing electric suppliers in three basic situations which we shall herein describe:

1. A "primary supplier" has the right to serve any "premise" initially requiring electric service except that a "primary supplier" may not infringe on the right of a "secondary supplier" to serve those "premises" guaranteed in situation #2, described below. *See* G.S. 160A-332(4), (7).

2. A "secondary supplier" has the right to continue serving "premises" it served before annexation and additionally to serve any "premise" located within a 300-foot corridor of its existing electric lines and more than 300 feet from the lines of a primary supplier. *See* G.S. 160A-332(1), (2).

3. Customers whose premises are located within 300 feet of the lines of both a "primary" and "secondary supplier" as well as customers whose premises are located only partially within 300 feet of the lines of a secondary supplier and more than 300 feet from the lines of a primary supplier may initially choose their supplier. G.S. 160A-331(5), (6). While G.S. 160A-332 guarantees the *post*-annexation rights of a secondary supplier, there is no comparable statute defining and guaranteeing the *pre*-annexation rights of competing electric suppliers.

The primary concern thus underlying Duke's contention is the loss of its potential post-annexation "corridor rights" if the City is allowed to extend electric lines prior to annexation to the outlying annexation area. In essence, Duke contends that if we allow the City to extend electric lines prior to annexation, in an area where Duke already has lines, the City will obtain rights to provide service to customers who so choose, and that such customers would have been exclusively Duke's had we not allowed such extension.

We recognize Duke's concern that the proposed extension of the City's lines before annexation may result in the loss of rights assured Duke had such extension occurred after annexation.

Nevertheless, by legislative mandate, Duke's rights under Part 2, G.S. 160A-331 to 160A-338 do not arise until after the effective date of annexation. Duke's contention, therefore, based on the potential loss of prospective rights is premature. Until the effective date of annexation, Duke has no standing to contest the loss of a right not yet attained. *See Texfi Industries v. City of Fayetteville*, 44 N.C. App. 268, 261 S.E. 2d 21 (1979), *affirmed*, 301 N.C. 1, 269 S.E. 2d 142 (1980).

In holding that the provisions of Part 2, G.S. 160A-331 to G.S. 160A-338, do not affect a city's right pursuant to G.S. 160A-312 to extend electric service outside its corporate limits, we have not ignored the clause in G.S. 160A-312 providing that a city's right pursuant thereto is "[s]ubject to Part 2 of this Article." Rather, we construe this clause so as to heed two principles of statutory construction: The first principle involves the presumption that no part of a statute is mere surplusage, but that each provision adds something not otherwise included therein. *Rocky Mount, supra.* The second principle is that words and phrases of a statute may not be interpreted out of context, but must be interpreted as a composite whole so as to harmonize with other statutory provisions and effectuate legislative intent. *Jolly v. Wright*, 300 N.C. 83, 265 S.E. 2d 135 (1980). An interpretation that best effectuates both principles of statutory construction is that the clause "[s]ubject to Part 2 of this Article" refers to those situations where a city extending its electric lines outside its corporate limits necessarily begins construction within its corporate limits. When a city extending service outside its corporate limits constructs lines beginning at some point within its corporate limits, then pursuant to G.S. 160A-312 and G.S. 160A-332, such lines as are within the city limits may not infringe on the guaranteed "corridor rights" of a secondary supplier.

By defining and restricting the rights of competing electric companies, the Legislature in the 1965 Electric Act, limited free competition among private electric suppliers in rural areas. It is for the Legislature, not for this Court to determine whether legislation other than G.S. 160A-312 is needed to curtail the competitive rights of municipal electric suppliers in rural areas. *See Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 166 S.E. 2d 663 (1969). It appears that the strategy of the City was to begin construction of its electric lines in the outlying territory

after its annexation plan was enacted but before it became effective. While we realize that pre-annexation construction by the City may result in the loss of potential post-annexation rights of a secondary supplier, nothing in the 1965 Electric Act restricts municipalities from adopting and implementing this kind of strategy. *See Vepco, supra; Lumbee River, supra.*

[4]   Under current legislation, the absolute right of a "secondary supplier" to serve customers within its 300-foot corridor arises upon the effective date of annexation, statutorily defined as the "determination date." *See* G.S. 160A-331, 160A-332. If the Legislature determines that the corridor rights of a secondary supplier deserve protection before the effective date of annexation, then it can guarantee such rights by defining the "determination date" when such rights arise as the date an annexation ordinance is adopted rather than the date an annexation plan is effected. Unless and until such time arises, we follow Supreme Court precedent in relying solely on G.S. 160A-312 in determining whether the City had legislative authority to extend its lines in this case.

C.

Our final consideration with regard to Duke's appeal is whether the City's proposed extension of electric service was within reasonable limitations pursuant to G.S. 160A-312. We conclude that it was.

[5]   The Supreme Court, construing G.S. 160A-312, in *Rocky Mount, supra, Lumbee River, supra,* and *Vepco, supra,* has developed a list of factors to consider in determining the reasonableness of a city's proposed extension of electric service. These factors include: the level of current service in the territory in question, the readiness, willingness, and ability of each competitor to provide electric service, the location of the territory in relation to the city limits, and the existence of any annexation plans by the City.

[6]   We do not interpret this list of factors to be exclusive, but rather, we think the Supreme Court intended that we consider all the facts and circumstances within each case, before determining the reasonableness of a proposed extension. *See Rocky Mount,* 285 N.C. at 144, 203 S.E. 2d at 844 (within reasonable limitations

does not refer solely to the territorial extent of the venture, but embraces all the facts and circumstances affecting the reasonableness of the venture). In affirming the reasonableness of the City's proposed extension of electric service in this case, we have followed and expanded upon the Supreme Court analysis. Factors determinative to our holding in this case include the City's subsequent annexation of the area (*see Vepco, supra*), the City's long-term cost-savings by providing its own service, and a recognition of State policy upholding the purpose of the City's proposed extension—that of providing street lights within the newly annexed area.

If the only factors we were to consider in determining reasonableness were the comparative readiness of the suppliers, their current service levels, and their initial costs of providing service, we would be constrained to find the City's proposed extension unreasonable under G.S. 160A-312. The facts showed that Duke was immediately ready to provide the necessary service, while the City needed to construct its own electric distribution system to be equally as ready. Although the City was the major electric supplier within the city limits, it served no premises within the six-mile annexation area. Duke, to the contrary, served 1,347 premises within the annexation area and provided approximately 30 street lights to a subdivision within the annexation area. In *Vepco*, the Court made it clear that a court comparing the current level of service should focus particularly on the level of service within the area to be served, *i.e.*, the annexation area here.

But for the City's subsequent annexation of the territory in question and its intention thereby of providing street lights, the facts here would parallel those of *Rocky Mount*, the first Supreme Court case construing the reasonable limitation standard of G.S. 160A-312. In *Rocky Mount*, Domestic Corporation, an investor-owned utility, had been providing electric service in an area outside the city limits pursuant to an assignment by the North Carolina Utilities Commission. Domestic had lines in the immediate vicinity of an apartment complex outside the city limits and was ready, willing, and able to provide service to the complex. The complex, however, requested the City to provide the necessary service. In order to do so, the City had to extend its distribution lines approximately 675 feet. On these facts, the

court held that the proposed service by the City exceeded reasonable limitations under G.S. 160A-312. *See id.* at 145, 203 S.E. 2d at 844. Like Domestic, Duke, in this case, already had lines in the proposed service area, assigned to it by the Utilities Commission, and was ready, willing, and able to provide the necessary service. Like the City of Rocky Mount, the City of High Point had to extend distribution lines in the annexation area in order to provide similar service. Nevertheless, other factors distinguish this case from *Rocky Mount* and show the reasonableness of the City's plan.

Unlike the Court in *Lumbee River,* we are not convinced that the initial construction costs in extending lines amount to unreasonable economic waste. In *Lumbee River,* the City had lines within the immediate vicinity of the outlying subdivision desiring electric service, while the electric company would have required five days of construction and $11,700 to be equally as ready. On these facts, the Court held that service by the City was within reasonable limitations. *See* 309 N.C. at 739-40, 309 S.E. 2d at 217-18. Although the facts here showed that the City, in order to provide the necessary service, had to construct distribution lines at a cost of $175,000 to $250,000, we do not find this cost to be unreasonable in light of the City's long-term savings. The trial court found that the City could furnish street lighting within the annexation area at a cost of $1.00 per street light per month cheaper than could Duke. In affirming the reasonableness of the City's proposed extension of electric lines, we have considered long-term benefits to the City and its taxpayers.

Central to our consideration of long-term benefits is the City's plans to annex and its subsequent annexation of the proposed service area. The annexation is a factor persuading us, as it did the Court in *Vepco* that "[the City's] extension of electric service . . . was and is 'within reasonable limitations.' " 310 N.C. at 307, 311 S.E. 2d at 589. There is no question but that upon the effective date of annexation the City had an absolute right to provide electric street lights. G.S. 160A-336. By allowing the City to construct electric lines in order to provide street lights *prior* to the effective date of annexation, we are upholding State policy to provide services within a newly annexed area on the same basis as such services are provided within the rest of the city. G.S. 160A-45(5); *see Fulghum v. Selma and Griffis v. Selma,* 238

N.C. 100, 76 S.E. 2d 368 (1953); *see also* G.S. 160A-52 (authorizing expenditures for services prior to the effective date of annexation).

The purpose of the City's proposed extension distinguishes this case from past Supreme Court cases interpreting the reasonableness standard of G.S. 160A-312. While the purpose of the extension in *Rocky Mount, Lumbee River,* and *Vepco* was to provide electric service to specific customers for profit, the purpose of the City's extension here was to provide a municipal service to its inhabitants. The facts, as found by the trial court, showed that the City contributed any surplus generated by the operation of its electric distribution system to its general fund and that such surplus, in turn, constituted 25% of the City's tax base. By authorizing the pre-annexation construction of electric lines in this case, we are encouraging the City to perform its primary function—that of "provid[ing] local government within its limits and authorized service to its inhabitants . . . ." *Rocky Mount,* 285 N.C. at 144, 203 S.E. 2d at 844.

For reasons heretofore explained, the trial court order authorizing the City's construction under G.S. 160A-312 is affirmed. Since the parties stipulated that the City could have completed construction before the effective date of annexation, lines constructed by the City in the annexation area shall be treated accordingly.

II.

In the second part of this opinion, we address the City's appeal from the trial court finding that upon the effective date of annexation, Duke would become a "secondary supplier." As part of Conclusion of Law Number Seventeen, the trial court found that Duke would "as of the determination date, become a 'secondary supplier' relative to the annexation area" and that its "potential future status" was one of the "various facts and circumstances to be considered in determining whether the extension by the City was within reasonable limitations." Without intimating an opinion regarding the status of Duke upon annexation, we vacate and set aside this Conclusion.

The "corridor rights" of a "secondary supplier," which Duke contends to be, to extend service within an annexation area, do not arise until the determination date, *i.e.,* the effective date of

annexation. G.S. 160A-331 and G.S. 160A-332. This case, however, arose before the "determination date." The question of prospective rights not yet at issue was improperly before the court.

As to Duke's appeal, the order is affirmed.

As to the City's appeal, the order is vacated.

Judges BRASWELL and EAGLES concur.