JAMES R. KIRKPATRICK, Trustee for JAMES R. KIRKPATRICK FAMILY REVOCABLE TRUST, Petitioner v. VILLAGE COUNCIL for the VILLAGE OF PINEHURST, Respondent

No. COA99-841

(Filed 16 May 2000)

### 1. Zoning— nonconforming use—expansion—geographical area

The trial court did not err by affirming respondent's decision that petitioner was not permitted to construct an RV park on an existing nonconforming campground. The relevant ordinance restricts the enlargement and increase of a nonconforming use and the extension of any nonconforming use to a greater area of land; the phrase "enlargement and increase" applies to any enlargement or increase within the geographical area originally covered by the permitted nonconforming use.

**2. Zoning— nonconforming use—meaning of enlarge**

Although petitioner contended that "renovations" of a campground did not constitute enlargement of a nonconforming use, the evidence supported the finding that the existing campground contained 50 identifiable sites and petitioner wished to construct an RV park capable of accommodating 150 vehicles. The plain meaning of "enlarge" is to become bigger, and respondent's finding supported the conclusion that the establishment of more than 50 total sites constitutes an enlargement of the pre-existing use.

**3. Zoning— nonconforming use—expansion—reliance on building permits—good faith**

The trial court correctly affirmed respondent's decision that the conversion of a campground to an RV park was an expansion of a nonconforming use even though petitioner argued that it had relied upon building permits. Respondent's finding that petitioner did not proceed in good faith because it knowingly took actions and made expenditures after it knew the project might not be permitted was supported by the evidence.

Appeal by petitioner from order filed 29 December 1998 by Judge Catherine C. Eagles in Moore County Superior Court. Heard in the Court of Appeals 18 April 2000.

*Van Camp, Hayes & Meacham, P.A., by James R. Van Camp and Michael J. Newman, for petitioner-appellant.*

*Poyner & Spruill, by Robin Tatum Morris, for respondent-appellee.*

GREENE, Judge.

James R. Kirkpatrick Family Revocable Trust, by and through its Trustee James R. Kirkpatrick (Petitioner), appeals an order filed 29 December 1998 affirming a 16 September 1996 decision of the Village Council for the Village of Pinehurst (Respondent).

The evidence shows that in September of 1994, Petitioner purchased approximately 55 acres of property located in the Village of Pinehurst (the Village). The property, which contained a campground, had been zoned RDD (Residential Development District) in 1981, and the campground existed as a nonconforming use of the property. The 1981 ordinance stated with regard to the nonconforming use of land:

11.1 <u>General</u>

> . . . It is the intent of this Ordinance to permit . . . non-conforming uses to continue until they are removed, discontinued, or destroyed but not to encourage such continued use, and to prohibit any further non-conformance or expansion thereof.

. . . .

11.3 <u>Non-Conforming Uses of Land</u>

> a. The non-conforming use of land shall not be enlarged or increased, nor shall any non-conforming use be extended to occupy a greater area of land than that occupied by such use at the time of the passage of this Ordinance.

Village of Pinehurst, N.C., Zoning Ordinance §§ 11.1, 11.3(a) (1981).

When Petitioner purchased the property, the campground was located on an approximately thirteen-acre tract[1] and included campsites and recreational facilities. In 1995, Petitioner began preparations to construct on the property a campground capable of accommodating 150 recreation vehicles (RVs). Petitioner's evidence shows that in 1994, prior to construction on this proposed RV campground, a survey of the property identified approximately 142 individual campsites on the property. Additionally, in April of 1995, a contractor retained to perform work on the campsite's roads identified approximately 163 individual campsites. In contrast, Respondent heard evidence that appraiser Michael Sparks (Sparks) appraised the property in 1994 and determined it contained "[f]ifty useable sites." Additionally, tax records from 1985 showed that at that time the property contained 50 sites that were in use.

On 19 September 1994, Respondent adopted an ordinance creating a commercial building moratorium in the Village because of Respondent's plan to "revise comprehensively the Village's current land-use plan and the ordinances related thereto." In a 10 February 1995 letter to the Village, Petitioner requested the Village consider rezoning the property on which the campground was located to include the operation of a campground as a conforming use. The letter stated Petitioner's "commitment to an upgrade and renovation of

---

1. Although Petitioner states in its brief to this Court that at the time of its purchase approximately 20 acres were utilized as a campground, Petitioner concedes "approximately 6.5 acres of this area included the lake and wetlands, resulting in the amenities and facilities being located on approximately a 13 acre tract."

this facility," and its intent "to provide a premier recreation vehicle type resort."

On 22 June 1995, Petitioner obtained from the Village a permit for 116 water and sewer taps for individual campsites on the campground. These water and sewer taps were installed, and on 23 June 1995, Sam Fowler (Fowler), the Chief Building Inspector and Interim Village Planner, inspected the installations. Fowler also inspected the campsite's sewer system seven additional times between 11 July 1995 and 13 September 1995.

On 24 August 1995, Respondent informed Petitioner by letter that no rezoning of property had occurred during the moratorium period, and the use of Petitioner's property as a campground continued to be a nonconforming use. The letter stated that "[f]urther expansion of this use . . . would be a direct violation of the current zoning ordinance."

In September of 1995, the Village Manager visited the property where construction on the proposed campground was being performed. Then, on 16 October 1995, Petitioner obtained from the Village an electrical installation permit which allowed an 800 amp., 1000 amp., and 1200 amp. electrical service at the campground. On 16 and 17 October 1995, the campground's electrical service was inspected by the Village.

On 23 October 1995, Respondent adopted a new developing code (the 1995 ordinance),[2] and the property containing the campground was rezoned as R-20.[3] The 1995 ordinance permitted a property owner to obtain a Major Special Use Permit to use the property for "Recreational Vehicle Parks" containing up to 120 sites for RV use. In a 6 November 1995 letter, Respondent informed Petitioner it was

---

2. The 1995 ordinance contains the following pertinent language regarding nonconforming use of land:

(a) . . . . A nonconforming use of land shall not be enlarged or extended in any way except as provided [in this ordinance]. . . .

(b) . . . . The continuation of a nonconforming use of land and the maintenance or minor repair of a structure containing a nonconforming use are permitted, provided that the continuation, maintenance, or minor repair does not extend or expand the nonconforming use. . . .

The Pinehurst Development Code § 16.1.2(a), (b) (1995).

3. R-20 zoning permits the use of property for single family dwellings, open space land, resource conservation facilities, roadside stands, and accessory uses. The Pinehurst Development Code § 8.5.2 (1995).

required under the 1995 ordinance to submit to the Village a Major Special Use Application for consideration by the Village's Planning and Zoning Board. Petitioner submitted the application on 15 November 1995; however, the application requested a permit for a 150-site RV campground. The application also requested permits to continue construction of the proposed RV campground on the grounds the proposed RV campground was a continuation of a previously existing nonconforming use, and Petitioner had obtained a common law vested right to construct the proposed RV campground based on its receipt of permits from the Village and the Village's inspections of the property in 1995.

On 15 November 1995, Petitioner was issued building permits for concrete work at the then existing pavilion and pool and foundation work on a proposed recreation building. Additionally, on 17 November 1995, the Village issued Petitioner a permit for plumbing work on the proposed recreation building, and on 11 December 1995 the Village issued Petitioner a permit for additional electrical service at the campground. In an 11 January 1996 letter to Petitioner, however, Respondent revoked the 17 November 1995 permit. The 11 January 1996 letter also stated that it is "in the best interest of all parties to wait before continuing with this construction until the process is complete with regards to [Petitioner's] application for a Major Special Use."

On 16 September 1996, Respondent denied Petitioner's Major Special Use Application.[4] Respondent additionally made the following pertinent finding of fact regarding Petitioner's nonconforming use of the property:

C. At the time . . . [Petitioner] purchased the [p]roperty, only the following sites and structures existed on the property:

1. A maximum of not more than 50 identifiable sites, some of which had water service, some of which had electrical service, some of which had both water and electrical service, and some of which had neither water nor electrical service and were "unimproved" in any way. None of these 50 sites had sewer service or were connected to a dump station.

4. Petitioner has not appealed Respondent's denial of the Major Special Use Application, which was denied on the ground the application did not conform to the requirements of a Major Special Use Application for an RV park. *See* The Pinehurst Development Code § 8.5.4 (1995).

Respondent then made the following pertinent conclusion of law: "The non-conforming use of the property was no more than 50 camp-sites which were used in a limited fashion on a 13 acre tract . . . which included those amenities listed above, . . . [t]hose facilities destroyed may not be replaced[, and] . . . [t]hose campsites added to the 50 campsites must be removed." Respondent also concluded "[t]he establishment of more than 50 total sites constitutes an . . . enlarge-ment of the pre-existing non-conforming use and is not permitted under [the 1981 ordinance]."[5] Finally, Respondent made the following pertinent findings of fact regarding whether Petitioner had obtained a vested right to construct the proposed RV campground:

> A. The [1995 ordinance] does not now and has never allowed campgrounds as a permitted use except as a major special use. Likewise, the proposed use [as an RV campground] was not a permitted use under the prior [1981] [o]rdinance.
>
> . . . .
>
> F. . . . [Petitioner] did not proceed with development of the RV Park in good faith. [Petitioner] knowingly took actions and made expenditures after [it] knew the project might not be permitted.

Based on these findings, Respondent concluded Petitioner "fail[ed] to show any basis whereby . . . [Petitioner] has any Vested Right to construct a proposed RV park."

Pursuant to N.C. Gen. Stat. § 160A-388(e), Petitioner then filed a petition for writ of certiorari in the superior court for review of Respondent's decision. In an opinion filed 29 December 1998, the superior court affirmed Respondent's decision.

---

The issues are whether: (I) a nonconforming use is "enlarged" within the meaning of section 11.3 of the 1981 ordinance when the "enlarge[ment]" of the nonconforming use occurs within the geo-graphical area of the original nonconforming use; (II) an intensifica-tion of a nonconforming use is an "enlarge[ment]" of the use under section 11.3 of the 1981 ordinance; and (III) the record contains sub-stantial evidence to support Respondent's finding of fact Petitioner acted in bad faith in "renovating" the property, therefore precluding

---

5. We note this conclusion is contained in Respondent's findings of fact; how-ever, it is more properly labeled a conclusion of law. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (determination requiring exercise of judgment or application of legal principles is a conclusion of law).

Petitioner from obtaining a common law vested right to construct the RV campground.

I

[1] Petitioner first contends a nonconforming use is not "enlarged" within the meaning of section 11.3 of the 1981 ordinance[6] when the enlargement occurs within the geographical area of the existing nonconforming use. We disagree.

A city may enact a zoning ordinance prohibiting the enlargement of a nonconforming use of property. *In re Appeal of Hasting*, 252 N.C. 327, 329, 113 S.E.2d 433, 434 (1960). Such zoning ordinances are construed in accordance with their legislative intent, which is ascertained under the same rules of construction used to determine the legislative intent of a statute. *In re O'Neal*, 243 N.C. 714, 720, 92 S.E.2d 189, 193 (1956). Restrictions must be interpreted based upon the language used in each particular ordinance, *id.* at 723, 92 S.E.2d at 195, and the proper interpretation of a zoning ordinance is a question of law, *Ayers v. Bd. of Adjust. for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201, *disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994).

In this case, section 11.1 of the 1981 ordinance states "[t]he nonconforming use of land shall not be enlarged or increased, nor shall any non-conforming use be extended to occupy a greater area of land." Village of Pinehurst, N.C., Zoning Ordinance § 11.1. Because the ordinance restricts the "enlarge[ment] [and] increase[]" of a nonconforming use <u>and</u> the "exten[sion]" of <u>any</u> nonconforming use to a "greater area of land," the phrase "enlarge[ment] [and] increase[]" applies to any enlargement or increase within the geographical area originally covered by the permitted nonconforming use. *See Duke Power Co. v. City of High Point*, 69 N.C. App. 378, 387, 317 S.E.2d 701, 706 ("no part of a statute is mere surplusage . . . [and] each provision adds something not otherwise included therein"), *disc. review denied*, 312 N.C. 82, 321 S.E.2d 895 (1984). This interpretation of section 11.1 is in accordance with the stated intent of the ordinance "not to encourage . . . continued [nonconforming] use, and to prohibit any

---

6. We note the parties dispute whether Petitioner's "renovations" are subject to the 1981 or 1995 ordinance. The record reveals some of Petitioner's "renovations" took place prior to the date the 1995 ordinance went into effect and some took place subsequent to this date. Because Petitioner argues in its brief to this Court its nonconforming use of the property was not an "enlarge[ment]" under the 1981 ordinance and does not address its use of the property under the 1995 ordinance, we address only the 1981 ordinance.

further non-conformance or expansion thereof." Village of Pinehurst, N.C., Zoning Ordinance § 11.1; *see Turlington v. McLeod*, 323 N.C. 591, 597, 374 S.E.2d 394, 399 (1988) ("when a statute on its face reveals the legislative intent and purpose, its terms are to be given meaning consistent with that intent and purpose"). Accordingly, Petitioner was not permitted under the 1981 ordinance to "enlarge" its nonconforming use of the property even within the geographical area of the original nonconforming use.

## II

**[2]** Petitioner alternatively argues the "renovations" it made to the campground in 1995 did not constitute an "enlarge[ment]" under the 1981 ordinance, but instead amounted to an intensification of the nonconforming use and were, therefore, permitted as a continuation of a nonconforming use.

Words in a statute must be construed in accordance with their plain meaning unless the statute provides an alternative meaning. *State v. Raines*, 319 N.C. 258, 262, 354 S.E.2d 486, 489 (1987). The plain meaning of "enlarge" is "to become bigger"; "to widen in scope." *New Webster's Dictionary and Thesaurus of the English Language* 314 (1992). A nonconforming use is, therefore, "enlarged" when the scope of the use is increased.

Petitioner contends based on this Court's holding in *Stegall v. Zoning Bd. of Adjustment of County of New Hanover*, 87 N.C. App. 359, 361 S.E.2d 309 (1987), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 671 (1988), an intensification of a nonconforming use does not constitute an "enlarge[ment]" of the use. The zoning ordinance in *Stegall* permitted a nonconforming use to be changed if the changes "amount only to changes in degree of activity rather than changes in kind." *Id.* at 363, 361 S.E.2d at 312. Based on the language of the ordinance permitting "changes in degree of activity," the *Stegall* court held "an increase in the intensity of the nonconforming activity is permissible [and] a change in the kind of activity conducted on the land is prohibited" under the ordinance. *Id.* at 364, 361 S.E.2d at 312. Because the ordinance in the case *sub judice* does not permit "changes in degree of activity" of a nonconforming use but prohibits any "enlarge[ment]" of a nonconforming use, the teaching of *Stegall* has no application to the facts of this case.

In this case, Respondent made a finding of fact that prior to Petitioner's renovations to the campground, the campground contained "not more than 50 identifiable sites." This finding of fact is

supported by evidence that in 1994 an appraiser determined the property contained "[f]ifty useable sites," and tax records showed that in 1985 the property had only 50 sites in use. We are therefore bound by this finding. *See Cannon v. Zoning Bd. of Adjustment of Wilmington*, 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983) (appellate review of decision of zoning board limited to whether findings of fact are supported by substantial evidence in the whole record and whether those findings of fact support the zoning board's conclusions of law); *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) ("substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Additionally, because any "renovations" resulting in an increase in the number of existing campsites would be an increase in the scope of the nonconforming use, Respondent's finding supports its conclusion of law that "[t]he establishment of more than 50 total sites constitutes an . . . enlargement of the pre-existing non-conforming use and is not permitted under [the 1981 ordinance]." *See Cannon* 65 N.C. App. at 47, 308 S.E.2d at 737.

III

**[3]** Petitioner also argues it obtained a common law vested right to construct the proposed RV campground because it relied in good faith on permits issued to it by Respondent for "renovations" to the campground, and these "renovations" were inspected by the Village. We disagree.

A party claiming a common law vested right in a nonconforming use of land must show: (1) substantial expenditures; (2) in good faith reliance; (3) on valid governmental approval; (4) resulting in the party's detriment. *Town of Hillsborough v. Smith*, 276 N.C. 48, 55, 170 S.E.2d 904, 909 (1969); *Browning-Ferris Industries v. Guilford County Bd. of Adj.*, 126 N.C. App. 168, 171-72, 484 S.E.2d 411, 414 (1997). A party acts in good faith reliance when it has "an honest belief that the [nonconforming use] would not violate declared public policy." *Warner v. W & O, Inc.*, 263 N.C. 37, 43, 138 S.E.2d 782, 786-87 (1964). A party, therefore, does not act in good faith reliance when it has knowledge the nonconforming use has been "declared unlawful by [a] duly enacted ordinance." *Id.* at 43, 138 S.E.2d at 787. Whether a party acts in good faith reliance is a question of fact to be determined by the zoning board, *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986), and we are bound by this finding if it is supported by substantial evidence in the whole record, *see Cannon*, 65 N.C. App. at 47, 308 S.E.2d at 737.

In this case, Respondent found as fact a campground has never been a conforming use under either the 1981 or 1995 ordinance, and Petitioner "did not proceed with development of the RV Park in good faith" because Petitioner "knowingly took actions and made expenditures after [it] knew the project might not be permitted." This finding of fact is supported by evidence Petitioner sent Respondent a letter on 10 February 1995 acknowledging a campground was a nonconforming use under the 1981 ordinance and requesting Respondent consider rezoning the property to allow a campground. Prior to any rezoning, Petitioner began construction of an RV campground on the property, and Petitioner continued construction efforts after receiving a 24 August 1995 letter from Respondent stating "[f]urther expansion of this use [of the property as a campground] . . . would be [a] direct violation of the current zoning ordinance." Because Respondent's finding of fact that Petitioner did not act in good faith is supported by substantial evidence, we are bound by this finding.[7] See Cannon, 65 N.C. App. at 47, 308 S.E.2d at 737. Additionally, this finding of fact supports Respondent's conclusion of law Petitioner "fail[ed] to show any basis whereby . . . [Petitioner] has any Vested Right to construct a proposed RV park." See Warner, 263 N.C. at 43, 138 S.E.2d at 786-87. Accordingly, we affirm the superior court's 29 December 1998 order affirming Respondent's 16 September 1996 decision.

Affirmed.

Judges McGEE and EDMUNDS concur.

---

7. Petitioner argues in its brief to this Court that "[t]here is no evidence in the record . . . [P]etitioner had knowledge of a 'specific' change which would ultimately occur in the zoning of [the] campground," and Petitioner, therefore, acted in good faith as a matter of law. Whether Petitioner had knowledge of changes that would be made to the 1995 ordinance, however, is not the dispositive issue regarding whether Petitioner acted in good faith. This is because Petitioner's "renovations" violated the 1981 ordinance which was duly enacted at the time "renovations" began. See Warner, 263 N.C. at 43, 138 S.E.2d 786-87. Additionally, Petitioner argues it acted in good faith because it received building permits for the "renovations" it performed. Whether Petitioner received permits for the "renovations," however, applies to the issue of whether Petitioner acted based on valid governmental approval and not whether Petitioner acted in good faith.