IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-822

Filed: 19 December 2017

Cabarrus County, No. 16 CVS 284

WALTON NORTH CAROLINA, LLC and WALTON NC CONCORD, LP, Plaintiffs,

v.

THE CITY OF CONCORD, NORTH CAROLINA, Defendant.

Appeal by plaintiffs from order entered 5 May 2017 by Judge Kevin M. Bridges in Cabarrus County Superior Court. Heard in the Court of Appeals 29 November 2017.

*K&L Gates, LLP, by Roy H. Michaux, Jr., and Scarbrough & Scarbrough, PLLC, by James E. Scarbrough and Madeline J. Trilling, for plaintiff-appellants.*

*The Brough Law Firm, PLLC, by G. Nicholas Herman, and City of Concord Attorney Valerie Kolczynski, for defendant-appellee.*

TYSON, Judge.

Walton North Carolina, LLC and Walton NC Concord, LP (collectively "Walton") appeal from the trial court's order denying its motion for summary judgment and granting summary judgment in favor of The City of Concord (the "City"). We affirm.

I. Background

A. History of the Property

The property at issue consists of 275.637 acres of unimproved land located on Odell School Road in Concord, North Carolina. The property was annexed into the city limits as of 30 September 2005, and was initially zoned Residential Low Density ("RL"). The RL zone allows a net density of two dwellings per acre. In 2005, Section 4.8 of the Concord Development Ordinance ("CDO") allowed for a "Cluster Development," to permit a density of more than two dwellings per acre, subject to certain conditions and limitations.

In 2005 and early 2006, the prior owner of the property sought to rezone the property from RL to Residential Medium Density ("RM-1" or "RM-2") to allow for the development of 684 homes on the property. The Concord Planning and Zoning Commission (the "Zoning Commission") denied this request on 21 February 2006.

On 18 April 2006, the Zoning Commission approved the prior owner's Preliminary Plat for the development of up to 563 dwellings through the use of the CDO's cluster development provisions. The cluster development provisions were repealed from the CDO on 12 January 2006, but the prior owner had submitted its project "for review as a 'cluster' subdivision" prior to the effective date of the repeal.

In order to pursue development under the Preliminary Plat, the developer was required to (1) submit and obtain approval for construction drawings, (2) file a final plat, and (3) obtain appropriate water and sewer infrastructure approvals prior to the stated expiration of the Preliminary Plat approval on 31 December 2013. The prior

property owner entered into an agreement with the City for the construction and cost sharing of water and sewer infrastructure on 30 October 2006. In May 2007, the prior owner submitted, and the City approved, construction drawings indicating 551 dwellings, fewer than the 563 allowed under the Preliminary Plat. No final plat was ever submitted or approved.

Because of the economic collapse of 2008 and the effects thereafter, the prior owner went bankrupt, and the property was foreclosed upon on 24 August 2011.

B. Walton Purchases the Property

Prior to purchasing the property, Walton had investigated the potential economic uses of the property, as detailed in a written report dated 17 February 2012. The report included a plan for developing the property by: (1) creating a new development plan, different from the previously approved Preliminary Plat; (2) seeking rezoning of the property to allow for a density of more than two dwellings per acre; and (3) entering into a "Development Agreement" with the City for an "offsite sewer extension."

This report also expressly recognized the cluster development provisions were no longer in effect for RL zoned property, and stated "previous entitlements and approvals" had expired and "the property should be considered raw and unentitled." Walton purchased the property on 15 March 2012.

Several months later, on 12 December 2012, the City sent Walton a letter concerning the 31 December 2013 expiration of the approved Preliminary Plat, offering to provide more information if requested. Walton never responded to the City's letter nor requested any further information regarding the approved Preliminary Plat.

In 2013, Walton discussed rezoning options for the property with planning staff from the City. Walton had also spent over $200,000 on various surveys, assessments, and reports to determine how many dwellings could be placed on the property under current and proposed zoning classifications. At no point in 2013 did Walton discuss pursuing development of the property under the prior approved Preliminary Plat with the City. The Preliminary Plat expired according to the terms of the City's approval on 31 December 2013.

In 2014, Walton and the City worked upon a co-operative development agreement for the off-site sewer extensions to the property. From a meeting between Walton and the City concerning the development agreement on 22 September 2014, Walton's notes indicate its awareness of the expiration of the prior approved Preliminary Plat and the prior repeal of the cluster provisions from the CDO. The City approved its development agreement with Walton on 9 October 2014, after the required public notice and hearing.

On 21 November 2014, Walton submitted a preliminary site plan to develop 551 dwellings on the property, pursuant to the Preliminary Plat approval granted to the prior owner. This plan more than doubled the number of dwellings allowed in the RL zone, proposing a net density of 4.5 dwellings per acre instead of the allowed two dwellings. In this submission, Walton stated it believed the property to be "zoned RL Cluster." On 2 December 2014, the City denied Walton's preliminary site plan.

C. Zoning Decisions

In order "to avoid the expense and delay of litigation," Walton then applied to and petitioned the Zoning Commission to rezone the property from RL to Residential Compact – Conditional District ("RC-CD") to allow for development of the property with 551 dwellings. In a six to one vote, the Zoning Commission approved Walton's rezoning request and preliminary subdivision plat, subject to certain conditions, on 15 September 2015, after a similar request had been denied in May.

Adjacent property owners filed an appeal to the City Council, pursuant to the CDO, on 29 September 2015. The City Council held a public hearing on 11 November 2015. Representatives from Walton spoke in favor of rezoning. Nine citizens spoke in opposition, mostly expressing concerns and objections related to traffic and congestion, storm water control and flooding problems, and adverse effects upon surrounding homes. The hearing was continued to 2 December 2015, to allow for more discussion on storm water issues.

At the continuation of the hearing, Walton and opponents of the rezoning were given equal time to speak. At the end of the hearing, the City Council voted to deny Walton's rezoning request, concluding:

> The proposed zoning amendment is not consistent with the 2015 Land Use Plan (LUP) because the proposed development of approximately two (2) dwelling units per acre will contribute to <u>increased traffic in an already congested area, contributes more negative impacts to the public school system and potential negative impact to homes in surrounding area.</u>
>
> The zoning amendment is not reasonable and not in the public interest because <u>of a 25% increase in the number of homes that would be allowed if the zoning</u> [were changed]. (Emphasis original).

Walton filed suit against the City on 28 January 2016, and sought (1) a declaratory judgment to declare Walton had a common law vested right to develop the property pursuant to the 2006 Preliminary Plat, as amended by the 21 November 2014 submittal; (2) an order finding the denial of its rezoning petition was not supported by competent, material, clear and cogent evidence and was arbitrary and capricious, and upholding the Commission's approval; (3) specific performance by the City to perform all terms and provisions of the development agreement; and, (4) a finding that the City Council's conduct at the hearings was in violation of Walton's equal protection rights under the North Carolina Constitution.

Both parties participated in a court-ordered mediation conference on 29 June 2016. Negotiations ultimately failed, and both parties filed motions for summary

judgment. In an order dated 5 May 2017, the superior court denied Walton's motion for summary judgment and granted summary judgment in favor of the City on all issues. Walton appeals.

## II. Jurisdiction

Jurisdiction lies in this Court from final judgment of the superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015).

## III. Issues

Walton argues the trial court erred in granting the City's motion for summary judgment and denying its motion for summary judgment because: (1) Walton had a common law vested right to develop the property based on the approved 2006 Preliminary Plat; (2) the development agreement between Walton and the City approved a 551-dwelling subdivision; and, (3) the City Council's denial of Walton's rezoning request was arbitrary and capricious, and should have been reversed.

## IV. Analysis

### A. Standard of Review

> Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the

> presence of a genuine factual dispute for trial. Nevertheless, if there is any question as to the weight of evidence summary judgment should be denied.

*In re Will of Jones*, 362 N.C. 569, 573-74, 669 S.E.2d 572, 576-77 (2008) (internal citations, quotation marks, and brackets omitted).

### B. Common Law Vested Rights

Walton argues it has a common law vested right to develop the property in accord with the prior approved 2006 Preliminary Plat. We disagree.

"As a general proposition the adoption of a zoning ordinance does not confer upon citizens . . . any vested rights[.]" *Browning-Ferris Indus. v. Guilford Cty. Bd. of Adjustment*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997) (citation and quotation marks omitted). However, landowners may "establish a vested right in a zoning ordinance" under the common law. *Id.* "A party claiming a common law vested right in a nonconforming use of land must show: (1) substantial expenditures; (2) in good faith reliance; (3) on valid governmental approval; (4) resulting in the party's detriment." *Kirkpatrick v. Village Council for the Village of Pinehurst*, 138 N.C. App. 79, 87, 530 S.E.2d 338, 343 (2000). The record does not support a showing of Walton's good-faith reliance on a valid governmental approval resulting in its detriment. *See id.*

It is uncontested Walton spent substantial sums prior to and after purchasing the property. The record also clearly indicates Walton did not intend to rely upon the prior approved 2006 Preliminary Plat, as Walton's pre-purchase report stated its

intention to create a *new* development plan.  Even if Walton argues its subsequent plans are almost identical to the prior approved Preliminary Plat, it waited nearly a year after the expiration of the 2006 Preliminary Plat to begin seeking new development approvals. *See Warner v. W & O, Inc.*, 263 N.C. 37, 43, 138 S.E.2d 782, 786-87 (1964) (holding vested rights do not protect those who wait to develop their property after an ordinance has been passed prohibiting the use).

No genuine issue of material fact exists that Walton was well aware of the Preliminary Plat's expiration, as the City provided written notice to them over one year prior to the Plat's expiration.  The pre-purchase report also correctly identifies the previous repeal of the cluster development provisions in the CDO.

Walton erroneously argues the 2006 approval, which grandfathered the repealed cluster development provisions, in some way still allows those cluster provisions as common law vested rights long after its expiration.  No vested rights exist where the party has prior knowledge of the existence of an ordinance prohibiting the proposed use. *Id*. at 43, 138 S.E.2d at 787.

Walton also argues it was unclear of what the expiration of the 2006 Preliminary Plat meant.  The record clearly shows Walton took no good-faith action to ascertain how the pending plat approval expiration may affect its proposed development scheme in the year between the City's notice and the Plat's expiration.

Walton concedes the expenditures in excess of $200,000 made prior to its purchase of the property "were needed regardless of the number of residential lots to be developed." Under the current RL zoning, the property can still be developed into a net two unit per acre residential subdivision, albeit with less density than allowed under the 2006 Preliminary Plat.

Walton failed to show any common law vested rights. The expenditures it made were not made in good-faith reliance on the approved 2006 Plat. Neither the expiration of the plat's approval nor the expenditures incurred are detrimental to Walton's ability to develop the property in accordance with the current RL zoning requirements or to other densities upon rezoning. *See Kirkpatrick*, 138 N.C. App. at 87, 530 S.E.2d at 343. Walton failed to show the trial court's grant of summary judgment for the City was error on this basis.

C. Development Agreement

Walton argues the development agreement it entered into with the City for the construction and shared costs of water and sewer infrastructure to serve the proposed development acted as a *de facto* zoning approval of a 551-dwelling subdivision. We disagree.

Local governments are authorized to enter into development agreements with developers, subject to approval by "the governing body of a local government by ordinance." N.C. Gen. Stat. § 160A-400.22(a) (2015). This authorization "is

supplemental to the powers conferred upon local governments and does not preclude or supersede rights and obligations established pursuant to other law regarding building permits, site-specific development plans, phased development plans, or *other provisions of law*." N.C. Gen. Stat. § 160A-400.20(c) (2015) (emphasis supplied). A development agreement requires:

> A description of all local development permits approved *or needed to be approved* for the development of the property together with a statement indicating that the failure of the agreement to address a particular permit, condition, term, or restriction does not relieve the developer of the necessity of complying with the law governing their permitting requirements, conditions, terms, or restrictions.

N.C. Gen. Stat. § 160A-400.25(a)(6) (2015) (emphasis supplied).

Here, the development agreement between the City and Walton recites and identifies Walton's intention to "develop the Property into a residential subdivision with approximately 551 dwelling units" and its need for "access to sanitary sewer and potable water" in order to develop the property. Paragraph 3 of the agreement unambiguously states:

> Walton shall submit to the Concord Planning and Zoning Commission a preliminary plat consistent with the purposes of this Agreement which shall at minimum depict the sizes, placements, and configurations of the lots, common open space, streets, sidewalks, and other improvements planned for the Property. The Property shall then be developed *consistent with the preliminary plat approved by the Concord Planning and Zoning Commission* and in accordance with this Agreement . . . . *Walton understands that the City's continued performance under this Agreement is contingent upon Walton receiving all*

*necessary approvals for its preliminary plat[.]* (Emphasis supplied).

Paragraph 4 further clarifies "[t]he maximum number of dwelling units will be determined by the applicable zoning and the approved preliminary plat[.]"

The agreement also states "[t]he local ordinances applicable to the development of the Property are those in force as of the date of this Agreement," in conformity with N.C. Gen. Stat. § 160A-400.26(a). The agreement was executed on 4 October 2014, months after the expiration of the approved 2006 Preliminary Plat on 31 December 2013, and years after the repeal of cluster development provisions from the CDO in 2006.

Walton erroneously asserts this development agreement constituted approval for "approximately 551 dwelling units," while the agreement clearly imposes and requires compliance with the *current* zoning requirements. RL zoned property allows a net density of two dwellings per acre. Walton's arguments on this basis are overruled.

## D. City Council's Denial

Walton contends the City Council's denial of Walton's request for rezoning was arbitrary and capricious, and, as such, the approval recommendation by the Zoning Commission should be upheld. We disagree.

"Rezoning is a legislative act[.]" *Sherrill v. Town of Wrightsville Beach*, 81 N.C. App. 369, 373, 344 S.E.2d 357, 360, *disc. review denied*, 318 N.C. 417, 349 S.E.2d 600

(1986). "Ordinarily, the only limitation upon this legislative authority is that it may not be exercised arbitrarily or capriciously." *Allred v. City of Raleigh*, 277 N.C. 530, 545, 178 S.E.2d 432, 440 (1971) (citation omitted).

> It is well established that the grant or denial of a rezoning request is purely a legislative decision which will be deemed arbitrary and capricious [only] if "the record demonstrates that it had no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense."

*Ashby v. Town of Cary*, 161 N.C. App. 499, 503, 588 S.E.2d 572, 574 (2003) (quoting *Graham v. City of Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981)).

"When the action of the legislative body is reviewed by the courts, the latter are not free to substitute their opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body." *Zopfi v. City of Wilmington*, 273 N.C. 430, 437, 160 S.E.2d 325, 332 (1968) (citation omitted).

At the conclusion of the second hearing before the City Council on 2 December 2015, Council members found the proposed rezoning was inconsistent with the current land use plan. They cited increased traffic in the area, a negative impact upon the public schools, and the potential negative impacts on the surrounding homes and properties. The Council also found the proposed rezoning, proposing a 25% increase in homes over the current RL zoned allowances, was unreasonable and not in the public interest. As these findings and the ultimate legislative decision to deny

the rezoning request have a "plausible basis," we are not free to substitute our opinion for that of the City Council. *See id.*

Additionally, "[t]he Planning and Zoning Commission . . . ha[s] no legislative, judicial or quasi-judicial power." *In re Markham*, 259 N.C. 566, 571, 131 S.E.2d 329, 334, *cert. denied*, 375 U.S. 931, 11 L. Ed. 2d 263 (1963). Whether or not property should be rezoned is a determination reserved for "the City Council in the exercise of its purely legislative function." *Id.* at 572, 131 S.E.2d at 334. The existing RL zone on the property is presumed to be correct. The burden of proof rested on Walton to overcome that presumption. *See Rakestraw v. Town of Knightdale*, 188 N.C. App. 129, 136, 654 S.E.2d 825, 830 (2008). The recommendation by the Commission in this case was advisory. The Council's decision to deny the rezoning was not arbitrary and capricious. Walton's arguments to the contrary are without merit.

## V. Conclusion

Walton had prior and actual notice, and ample time, to act upon the prior approved 2006 Preliminary Plat, which would have allowed the development of a 551-dwelling subdivision under the repealed, but grandfathered, cluster development provisions in the CDO. Walton chose to pursue a "new development" plan not related to the approved 2006 Preliminary Plat, and only attempted to revert back to the prior approved Plat after it had expired. Walton did not rely in good faith upon a valid governmental approval and cannot show a common law vested interest in developing

the property under the expired 2006 Preliminary Plat. *See Kirkpatrick*, 138 N.C. App. at 87, 530 S.E.2d at 343.

We have examined the entire record and do not find any support for Walton's other assertions that the approval of the development agreement acted as a zoning approval by the City for a 551-dwelling development under the express terms and limitations of that agreement.  Walton has also failed to provide any basis to show the City Council's denial of Walton's rezoning request was arbitrary and capricious.

Under *de novo* review, the trial court correctly granted summary judgment in favor of the City and denied Walton's motion for summary judgment.  The trial court's order appealed from is affirmed.  *It is so ordered.*

AFFIRMED.

Judges CALABRIA and DAVIS concur.